Oscar B. Heil, Dilliard Ford, Ray Rixman, A. L. Frield, W. E. Crawford, George A. Bressel, Denzel Watkins, William Clay, Louis Rotenberg, L. J. Messerly, John A. Frantz, Richard Pound, Fred Mayer, William F. Rosenberg, Ralph G. Phegley, Dave Schwartz and Sid Bassin, d/b/a Fischer's Fleet: William Anderson, LeRoy Helmholt, Joseph J. Dimartino, J. H. Roberts, Elmer J. Kircher, William P. Astroth, Harvey M. Neisler, Otto Busilaki, Irene Lauman, Cletus Nelson, John L. Koob, Ullus Gudder and George Gudder, d/b/a Star Service Company: Bessie Green and Earl L. Ferbrache v. Aloys P. Kaufmann, Edwin E. Huffman, Thomas F. Muldoon, Louis Shifrin and James Mitchell, Appellants.—No. 39391.—189 S. W. (2d) 276.

Division Two, September 4, 1945.

*Joseph F. Holland,* City Counselor, and *Oliver Senti,* Associate City Counselor, for appellants; *Joseph Boxerman* of counsel.

272

*Alfred L. Grattendick* for respondents.

WESTHUES, C.—Plaintiff, Oscar B. Heil, owner and operator of a filling station in the City of St. Louis, Missouri, selling gasoline, oils and other products to the general public, filed this suit, on his own behalf and others similarly situated, against the defendants Aloys P. Kaufmann, Mayor of said city; Edwin E. Huffman, Thomas F. Muldoon and Louis Shifrin, members of the board of police commissioners, and James Mitchell, chief of police, to enjoin the enforcement of an ordinance prohibiting the sale of gasoline and other petroleum products during certain hours. The trial court declared the ordinance involved void and enjoined its enforcement. The defendants appealed. After the suit was filed a number of persons and corporations joined Heil as plaintiffs.

It is claimed that the ordinance is unconstitutional as being in violation of the due process provision, Sec. 30, Art. 2, of the Missouri Constitution, and also in violation of the fourteenth amendment of the United States Constitution. Plaintiffs also contend that the ordinance is unreasonable and discriminatory. The ordinance, number 42410, as amended by ordinance 42588, provides in substance as follows. The preamble to the ordinance reads:

"An ordinance regulating the sale, or offering or exposing for sale, of gasoline or other petroleum products at retail, by prescribing the hours within which it shall be unlawful to sell, or offer the same for sale, and containing a penalty clause and an emergency clause."

Section one provides that for the period of the national emergency created by the war and for six months thereafter it shall be unlawful

to sell at retail gasoline and other petroleum products "before the hour of ■ 6:00 A. M. on any day or after the hour of 7:00 o'clock P. M. on Mondays, Tuesdays, Wednesdays, Thursdays or Fridays, or after 9:00 o'clock P. M. on Saturdays or after 1:00 o'clock P. M. on Sundays." Section two provides that section one shall not apply to the day preceding New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day. On such days the products may be sold from 6:00 A. M. to 9:00 P. M. Section three is the section that was amended by ordinance number 42588. The portion of this section, as amended, provides as follows:

"The provisions of this ordinance shall not apply between the hours of 7 o'clock P. M., on Mondays, Tuesdays, Wednesdays, Thursdays and Fridays, and 6:00 o'clock A. M. the following day, 9 o'clock P. M. on Saturdays and the days preceding the holidays mentioned in Section Two hereof and 6:00 o'clock A. M. the following day and 1:00 o'clock P. M. on Sundays and 6:00 o'clock A. M. the following day, to persons, firms or corporations engaged in the sale of motor vehicle fuels who, between the said hours on said days sell, deliver or furnish the same only to persons, firms or corporations engaged as 'common carriers' in the operation of motor vehicles transporting freight or passengers for hire; . . . "

An emergency clause declares that the ordinance is deemed necessary for the immediate preservation of public safety.

■ As a starting point let us examine the ordinance and see just what it provides. Nowhere in the ordinance do we find a provision that requires any vendor of petroleum products to close his place of business at any time. Section one does provide that the operator of such a place of business shall not sell or offer for sale any of such products during certain hours. Section three, as amended, provides that the ordinance shall not apply to those engaged in that business who "between the said hours on said days sell, deliver or furnish the same only to persons, firms or corporations engaged as 'common carriers' in the operation of motor vehicles transporting freight or passengers for hire; . . . " Appellants in their brief say:

"If a regulation is designed to shorten the hours of labor in gasoline filling stations, it is reasonable to strike at the root of the evil and require them to be closed at certain times."

At another point in the brief appellant say:

"More than forty years ago this Court upheld an act prohibiting the working of laborers underground for more than eight hours a day in State v. Cantwell, 179 Mo. 245, 78 S. W. 569, which was affirmed by the Supreme Court in 199 U. S. 602, 50 L. Ed. 29."

However, under the provisions of the ordinance as above noted, a vendor of gasoline and kindred products may keep his place of business open twenty-four hours per day, seven days of the week, so long as during the prohibited hours he sells gas only to common carriers.

A violation of the ordinance would consist in a dealer selling gas or other similar products during the prohibited hours to a person for use in a car not engaged as a common carrier. Keeping his place of business open would not be a violation of the ordinance. Nor would it be a violation if the owner or his helpers labored twelve or even eighteen hours per day.

The question then is, can the ordinance be upheld as a public health and welfare measure and is it discriminatory? Appellants in their brief summarize their positions as follows:

"The Ordinance Has a Reasonable Relation to the Public Health and Welfare.

"(a) Owners and employees of gasoline filling stations work under conditions that are liable to be detrimental to their health. They are exposed to:

"(1) Poisonous exhaust fumes;

"(2) Fumes from vaporized gasoline;

"(3) Potential danger of lead poisoning;

"(4) To rain, snow and cold;

"(5) Alternately to relatively high and low temperatures;

"(6) Unreasonably long hours at work; and

"(7) Excessive labor resulting from manpower shortage.

"(b) Unless the hours of all stations are regulated, small station owners are compelled to remain open unreasonably long hours, because:

"(1) The size of the business does not usually permit the employment of sufficient men to stagger their hours;

"(2) Where one man is so unduly acquisitive that he is willing to endure long slavish hours, economic necessity compels his competitors and their employees to do likewise to the detriment of their health and well-being."

The trouble with appellants' position is that the ordinance does not regulate the hours of *all* stations or even any station. It is discriminatory in that one operator, whose business happens to be located so that eighty or ninety per cent of his sales are made to owners of private cars, cannot afford to remain open during the prohibited hours. This, not because the ordinance commands him to close, but because he cannot sell enough merchandise to make a profit. Another operator, located only a few blocks away on a state highway carrying heavy traffic of busses and trucks, can afford and does remain open for business. It is in evidence that at a number of stations the bulk of sales was made to owners of private cars between the hours of 7:00 and 10:00 P. M. Owners of small stations are, under the ordinance, subjected to competition of larger stations the same as before the ordinance was enacted. For example, a small station located along a highway carrying a heavy load of trucks and busses must remain open to compete with the larger stations or lose

his business. Operators of stations whose sales are to common carriers are subjected to all of the dangers enumerated by appellants in their brief, which we quoted above, to the same extent as operators whose customers happen to be mostly owners of private cars. The ordinance, as we see it, does not eliminate the danger to public health which appellants claim it does. The only ultimate effects of the ordinance are, that owners of private cars cannot buy gas within the corporate limits of the city of St. Louis during the prohibited hours, and stations where sales to common carriers do not justify keeping open during those hours must close only because keeping open is not profitable to them. The man, who, as appellants say, is so unduly acquisitive that he is willing to endure long slavish hours, can, under the ordinance, remain at his station twenty-four hours per day selling his wares, if during the prohibited hours he sells only to common carriers. The classification attempted to be made is not sound. There is no distinction between the hazards of a filling station selling mostly to private owners of cars and those whose principal customers are common carriers.

Courts, under the constitution, are in duty bound to declare such ordinances void. See City of Springfield v. Smith, 322 Mo. 1129, 19 S. W. (2d) 1, l. c. 3 (5); Blind v. Brockman, 321 Mo. 58, 12 S. W. (2d) 742, l. c. 747 (5) In this latter case this court said:

"The mere question of the wisdom expressed in a law operating within these limits is for the Legislature. The question whether the exercise of the power has transgressed the limit fixed by the organic law is one for the courts. While it is the duty of the courts to guard the constitutional rights of the citizen against merely arbitrary power, it is equally true that legislative enactments should be recognized and enforced by the court, as embodying the will of the people unless they are plainly and palpably a violation of the fundamental law of the Constitution."

In the Springfield case an ordinance was declared unconstitutional because certain classes of entertainment establishments were required to close on Sundays while others were not. The court, 19 S. W. (2d) l. c. 5 (7), said:

"The demands of the organic law are satisfied if all similarly situated are included and none are omitted whose relationship to the subject-matter cannot by reason be distinguished from that of those included."

It would serve no useful purpose to discuss this question at length. The subject has been considered thoroughly on numerous occasions as will be noted by the two cases cited. In the case before us the operator of a filling station, whose customers consist of owners of private cars, cannot sell his products to those customers during certain hours, while other filling stations, whose customers are mostly common carriers, may sell their products to their customers twenty-

four hours per day. It is apparent that the alleged evil sought to be eliminated may continue unabated under the provisions of the ordinance. The ordinance discriminates against one class of dealers whose business is similarly situated to those who are permitted to open for business. It is, therefore, void.

The judgment of the trial court is affirmed. *Bohling* and *Barrett*, CC., concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.