HERMAN M. BROWN COMPANY, appellee, v. RAY E. JOHNSON
et al., constituting the Iowa State Tax Commission,
appellants.

No. 49067.

(Reported in 82 N.W.2d 134 and 84 N.W.2d 44)

APRIL 3, 1957.

SUPPLEMENTAL OPINION AND REHEARING DENIED

JULY 22, 1957.

1144

Dayton Countryman, Attorney General, M. A. Iverson, Special Assistant Attorney General, and J. M. Barrett, Special Counsel for State Tax Commission, for appellants.

Abramson & Myers, of Des Moines, by A. J. Myers, for appellee.

BLISS, C. J.—This action involves the Iowa Use Tax statute, chapter 423 of the 1954 Code of Iowa. There is no substantial dispute over the facts. The parties have stipulated many of them. The testimonial evidence is not extensive but the exhibits which have been certified to this court are voluminous.

Section 423.1(1) provides: " 'Use' means and includes the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include processing, *or the sale of that property in the regular course of business. * * *."* (Italics ours.)

Section 423.2: "Imposition of tax. An excise tax is hereby imposed *on the use* in this state of tangible personal property purchased on or after the effective date* [* 47 G.A. ch. 198, effective date, April 16, 1937] of this chapter *for use in this state,* at the rate of two percent of the purchase price of such property. Said tax is hereby imposed upon every person using such property within this state until such tax has been paid directly to the county treasurer, to a retailer, or to the commission as hereinafter provided." (Italics ours.)

Section 423.4: "Exemptions. The use in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this chapter:

"1. Tangible personal property, the gross receipts from the sale of which are required to be included in the measure of the tax imposed by division IV of chapter 422, and any amendments made or which may hereafter be made thereto.* * *."

Division IV of chapter 422 mentioned just above is the statutory provision requiring the payment of the sales tax of two per cent.

Appellee is an Iowa corporation with its home office at Des Moines, Iowa. For ten or more years prior to July 1, 1953, it was engaged in Iowa in selling heavy road-building machinery

and equipment. Its business was in buying new merchandise at wholesale prices and selling it at retail prices to its customers in Iowa. In effecting these sales to its customers, the appellee, in by far the greater number of transactions, used a printed lease agreement, which was preferable to its purchasers, wherein the rental specified was payable by the day, week, month or longer periods. In the agreement was the provision: "Lessee to pay state sales tax as required by law", and also another provision that "in case lessee desires to purchase the above-mentioned equipment, _____ per cent of all rentals paid in may be applied against the purchase price, which is $_____ F.O.B. _____ ship or deliver to _____. Rental starts _____." The lessee agreed to maintain the machinery and equipment in the same condition as when delivered, usual wear and tear excepted, and to pay all claims for damages to the equipment, and to persons injured in its use. Some of the leases were oral, but subject to the foregoing conditions and provisions. Two thirds or more of the transactions resulted in sales of equipments, upon which sales taxes were paid on the total sales prices, and were remitted to the state by appellee.

If the option to purchase was not exercised the property was returned to the appellee, and it made lease transactions like unto the original one until an eventual final sale was made. Such sales were made in all but four transactions, in one of which the item of property could not be located. In some instances several lease agreements were made before a final sale was consummated.

*The appellee did not pay use taxes on the property returned by lessees who did not become ultimate purchasers.* The Commission insisted upon these payments being made, and had two accountants make an audit of appellee's records for the five-year period commencing July 1, 1948, and terminating July 1, 1953. As a result of this audit, the Commission demanded $11,622.45 as use taxes and penalty thereon of $986.22, or a total claim of $12,608.67. Later the Commission reduced the claim by $264.46 to $12,344.21, the amount in controversy, which it exacted as use taxes. Appellee paid it under protest and brought this action for an order or decree of mandamus commanding its refund to it.

The contention of the Commission is stated in its printed argument in this court as follows: "During the period (the five

years herein noted) appellee leased various items of machinery and equipment to various customers, some of which was ultimately purchased by the lessees thereof through the exercise of an option to purchase. Some of such leased equipment was returned to the lessor-appellee without the lessee thereof having exercised any option to purchase the same. *The leased equipment which was returned by the first lessee to the appellee without exercising any option to purchase the same was viewed by the Tax Commission as having been subjected to a use by rental on the part of the Herman M. Brown Company.* Such use of the said equipment was noted in an audit of the books and records of said company covering the period from July 1, 1948 to July 1, 1953, and as a result of such audit, an Iowa use tax and penalty assessment was made thereon. * * * *the portion thereof relating to the equipment rented without the exercise of an option to purchase by the first lessee is the only part thereof which is contested.*" (Italics ours.)

The appellee used but two witnesses. One was Ben Brown, its general sales manager, during the period of the audit, and William Sampson, its treasurer during the same period. Mr. Brown testified:

"The Herman M. Brown Company acquires and purchases its equipment *for the purpose of reselling such equipment.* It has a retail sales tax permit. In recent years there has been a policy established by the plaintiff-company *of renting equipment at times to promote the sale of equipment. As Sales Manager and Director of Sales of the plaintiff-company, I know the policy of the plaintiff-company has been to permit all equipment on rental to be purchased by the lessee whether that lease was by written or oral agreement.* * * * The Herman M. Brown Company purchases or acquires none of the property or equipment that it deals *in at retail. The rental of equipment consummated by our company is for the purpose of promoting sales of our merchandise. The rentals promote sales of the company because some of the purchasers do not want to show liability in their accounts which would be occasioned if the equipment were bought on conditional sales contract,* because there are times when they want to see what the equipment will do and whether

they have the proper size or the correct equipment to do the job, and because of income tax considerations for the purchaser. The income tax advantage is obtained by the contractor renting the equipment, and charging the rental off to the job, and then later purchasing such equipment. * * * [cross-examination] Some of the items that are the subject of these lease contracts are rented several times to different people before they are eventually sold. * * * I don't know what the customer has in mind when he rents equipment other than the fact when they come in and rent it, it is usually for a period where we think it is going to be a sale. * * * We have no way of knowing whether it is going to turn into a sale or not. * * * My conclusion that the customers rent this equipment rather than purchase for income tax purposes or income tax savings is based upon their telling us that is why they want to purchase it on a rental purchase plan, which means they want to purchase it but they want to do it on a rental basis. I have testified that our purchases are never at retail prices, but are at the wholesale price."

The testimony of Mr. Sampson was confirmatory of that of Mr. Brown that the business of the appellee and the purpose of it was not in leasing merchandise, but in selling it at retail, and that all leases by it were only for the purpose of promoting and effecting outright sales. He testified:

"Our company is in the business of selling goods, wares, and merchandise for profit. * * * All of the equipment and machinery that the plaintiff purchased was purchased at wholesale. * * * To the best of my knowledge, we have never had a rental on which the purchaser did not have the option of applying the rentals he had paid against the purchase of that equipment."

The parties stipulated: "* * * In most, although not all cases, where plaintiff leased equipment a written lease agreement was signed by the parties, which agreement contained an option to purchase clause which may or may not have been exercised by the lessee. * * *. Under most of these written lease agreements, the lessee does, in fact, exercise the option to purchase the property so leased and when such option is exercised, the rentals previously paid are applied upon the purchase price

and these rental payments, together with an additional amount specified in the written lease agreement, are paid by the lessee or purchaser to the plaintiff and the total amount so paid is the measure for computing the sales tax."

The defendant-appellant offered but one witness, Mr. George E. Koons, a field operator of the Commission, who with an assistant, Mr. Hubert Hild, audited the books and records of the appellee for the five-year period hereinbefore referred to. He testified that it was part of his duties to examine the records of taxpayers when assigned to do so for the purpose of determining whether they have discharged their sales-tax or use-tax liability. These examiners made an audit of appellee's records covering the period between July 1, 1948, and July 1, 1953, for the purpose of determining whether or not it had purchased equipment which it leased or sold to its customers. The main source of information was the identification cards the appellee would make upon receiving different pieces of equipment. Their audit covering said five-year period was introduced as the Commission's Exhibit "F", of forty-five sheets, 11 by 16 inches, containing 448 items of merchandise. Each sheet had five columns of which the first described the items, the second from whom and when acquired, the third to whom and when leased, the fourth to whom and when sold, with the selling price, if known, and the fifth column, the cost of each item. This exhibit, as testified by the examining auditor, listed the items of equipment which had been leased out during the five-year-audit period and which had been subsequently sold to a party, other than the original lessee, prior to the end of the audit period.

The auditor also prepared the Commission's Exhibit "G", containing twelve sheets of the same size as those of Exhibit "F", with like data except that the auditor testified it listed items of equipment which had been rented during the audit period but remained unsold at the end of that period. This exhibit listed 100 items of merchandise.

The appellee prepared and introduced its Exhibit "5", as its analysis of the Commission's Exhibit "F", relating to equipment which was rented and finally sold by appellee during the audit period to a customer other than the first customer. In separate columns it lists the items of merchandise, the cost of

each, the times each was leased, the rental received for each lease, and the sale price of each item. The total cost of the items was $451,089.57, the total rentals were $156,101.77, the total received from the sales was $554,343.95, as shown by Exhibit "5".

Appellee also introduced its Exhibit "6" which is its analysis of the Commission's Exhibit "G", relating to equipment which was rented during the audit period, but as to which the lessee had exercised no option to purchase during the audit period. This exhibit lists 58 items of merchandise, with columns showing the cost of each item to appellee, the number of times it was leased, the rentals for each item, and the selling price of each, excepting three items which were not sold and one item which could not be located. The exhibit shows the total cost. of the items listed was $119,794, the total rentals were $57,223.05, and the total amount received from the sales was $117,852.12.

The Commission's Exhibit "G" lists all of the items of property as "not sold." Appellee's Exhibit "6" shows each item of property in Exhibit "G", except the four items herein noted, was eventually sold, and the sale price of each. Exhibits "F", "G", "5" and "6" confirm the testimony of Mr. Brown and Mr. Sampson that the appellee acquired and purchased the property involved at wholesale prices solely *for the purpose of. selling it at retail, and not for the purpose and use of leasing it*. It is clear from the record that the leases which appellee made were solely for the purpose of promoting and effecting sales of property which it purchased for retail sale.

The appellee during the five-year period covered by the audit was the sole representative in Iowa for the sale of products of the International Harvester Company (tractors and bulldozers), Koehring Company (cranes, pavers), Ingersoll-Rand (compressors and motor graders), J. D. Adams Company (motor graders), Bucyrus & Erie Company (scrapers), and other manufacturers of road-building equipment.

The able trial court, who discussed the matters thoroughly in his findings of fact, conclusions of law and decree, said:

"The equipment handled by plaintiff and involved in this action was purchased by it for the purpose of resale, and there-

1150

fore no sales or use tax was paid at the time of the purchase, *but a sales tax was paid when the items were eventually sold.* * * *. (Italics ours.)

"For some period of time, including the audit period involved herein, plaintiff has, in addition to making outright sales, entered into lease agreements for its equipment, most of which granted the lessee the option to purchase the equipment from plaintiff and apply the rentals on the purchase price. This type of rental arrangement in which the lease form, plaintiff's Exhibit 1, was usually used, was for the purpose of promoting sales. Two thirds of the rental transactions ripened into a sale to the lessee, and, as hereinbefore stated, the income from the other rentals of equipment wherein the lessee did not exercise his option to purchase amounted to only one and one-half per cent of the total volume of plaintiff's business during the period in question.

"All of the transactions in this case involved equipment which was leased by plaintiff one or more times to lessees who, at the expiration of the rental period, returned the equipment to plaintiff, which subsequently sold the equipment to other persons or companies. The rental periods of the various pieces of equipment ranged from a single rental of one hour to those where a piece of equipment was rented a number of times for longer periods. The equipment listed in plaintiff's Exhibit '5' was sold during the audit period and that listed in plaintiff's Exhibit '6' was sold subsequent to said period. In every instance, the sales tax on all equipment involved herein was collected when the sale by plaintiff was made, and this tax was remitted to the defendant Tax Commission. The total of the sales prices of this equipment, upon which sales tax was paid, was nineteen per cent more than the total of the purchase prices thereof, which represented substantially the same percentage of gross profit as plaintiff derived from all its other sales.

"The defendant Tax Commission caused an audit to be made of plaintiff's records for the five-year period ending July 1, 1953, whereupon they demanded that in addition to the sales tax paid on the selling price of the equipment involved herein, plaintiff should pay a use tax on all of said equipment which had been rented to others than the eventual purchaser. Among the

items included in this imposition of both a use tax and a sales tax on the same articles, there are two which stand out as glaring examples of the unfairness of this attempt at double taxation, namely: Item No. 16 listed on Exhibit 'F'—motor grader purchased by plaintiff for $10,251.80 and eventually sold for $12,000, but which was rented out for a short period prior to sale for a total rental of $100. Rental collected—$100. Use tax paid, computed on plaintiff's purchase price—$205. Double the amount received for the rental which caused the tax to be imposed.

"Item No. 65 listed on Exhibit 'F', involving a smaller amount but the same principle, a motor grader purchased by plaintiff for $671.85 and eventually sold, but which was *rented out for one hour* for a rental of $7.50. Rental collected—$7.50. Use tax paid, computed on plaintiff's purchase price—$13.42. Imposed because plaintiff had received $7.50 in rental.

"The plaintiff complied with defendant's demand by paying under protest, on April 16, 1954, the sum of $11,622.45 use tax and $986.22 in interest or penalty thereon.

"Thereafter, on May 14, 1954, plaintiff filed with the defendant Tax Commission a claim for refund of said amounts totaling $12,608.67, which claim was denied by the defendant on the same date.

"This appeal was thereupon taken by plaintiff from the decision and action of the defendant Tax Commission, said appeal being based upon plaintiff's contentions that the law does not impose a use tax on the transactions here involved; that said transactions are exempt from use tax; that the Iowa legislature never intended to impose a use tax on such transactions; that the rules of the Tax Commission attempting to impose a tax are inconsistent with the law and are therefore of no validity."

In its "Conclusions of Law" the trial court stated: "The propositions presented in this action are whether the defendant Tax Commission rightfully collected both a sales tax and a use tax in connection with the equipment involved herein. A decision in the matter requires consideration of the purpose and interrelation of the Iowa sales tax and Iowa use tax, and their applicability or inapplicability to the transactions involved in this action. No question has been or could be raised about the

collection and payment of the sales tax on said equipment which was paid by plaintiff when the various items were sold by it. The two per cent sales tax thus paid was that imposed by Code section 422.43, and it was thus recognized by the parties that those transactions were retail sales by plaintiff, as a retailer, which brought it under the provisions of said statute."

It was the contention of the Commission in the district court, and in this court, that appellee's leasing of equipment to others, prior to its sale to the ultimate purchaser created a liability under Code section 423.2, and under rules 126, 126.1 and 166 of the Commission, for payment of the two per cent use tax, based on the purchase price of the equipment.

The appellee insists that the Commission's contention is without merit and that its said rules are inconsistent with the provisions of the use-tax statute, noted herein, and that the latter was not intended to, and does not, impose a use tax on the property involved.

██ I. We agree with the contention of the appellee and the holding of the trial court.

In Dain Mfg. Co. v. Iowa State Tax Comm., 237 Iowa 531, 534, 22 N.W.2d 786, 788, this court said: "The purpose of the use-tax law is indirectly to tax sales that cannot be directly taxed under the Iowa sales-tax law. Since sales of property designed for use in Iowa cannot be taxed if consummated outside of the state, our legislature has resorted to the plan (not uncommon in recent years) of taxing the use of such property in the state. The tax is on the use but it presupposes a prior sale. The tax serves the double purpose of producing revenue that otherwise might not be available and of furnishing some measure of protection to Iowa dealers from competition with outside vendors not subject to liability for sales tax. See discussion in Henneford v. Silas Mason Co., 300 U. S. 577, 581, 57 S. Ct. 524, 526, 81 L. Ed. 814, quoted in Zoller Brewing Co. v. State Tax Commission, 232 Iowa 1104, 1106, 5 N.W.2d 643, 6 N.W.2d 843. *The law is at the same time apparently drawn with the purpose of avoiding double taxation.* See Code sections 6943.104 (subsections 1 and 4) [1939 Code of Iowa] and 6943.125 [1939 Code]. Section 6943.102, subsection 1(c) [of the

same Code], also seems designed for a somewhat similar purpose, as it expressly excludes use by resale and use by processing for the production of property for ultimate sale at retail, in either of which cases a sales tax would probably result." (Italics ours.)

The sections from the 1939 Code, noted in the quotation, correspond to their successors in the 1954 Code, some of which we have quoted herein.

■ II. It is the general holding of the courts construing use-tax statutes, that they are complementary, or supplemental, to enacted retail-sales-tax statutes. That is the holding of this court.

In State Tax Commission v. General Trading Co., 233 Iowa 877, 886, 10 N.W.2d 659, 663, 153 A. L. R. 602, 608, affirmed by 322 U. S. 335, 64 S. Ct. 1028, 88 L. Ed. 1309, we stated: "In several of the cases above quoted from, the Supreme Court of the United States emphasized that the use tax is complementary to the retail sales tax. Retailers selling tangible personal property for use in Iowa are liable for a sales tax of two per cent of the purchase price if the sale takes place in Iowa. * * * *If the retail-sales tax is collected and paid, no use tax is due.* [Italics ours.] But if the sale is made under such circumstances that the retail-sales tax is not due, then there is a price differential in the amount of the sales tax which the use tax seeks to offset. By compelling defendant to collect and pay the use tax, the Tax Commission seeks to compel defendant to operate on an equality with the retailers in Iowa who, as a part of their business operations, collect and pay the retail-sales tax on all sales made by them."

In Peoples Gas & Elec. Co. v. State Tax Comm., 238 Iowa 1369, 1372, 28 N.W.2d 799, 802, the court stated: "The use-tax law is supplementary to the sales-tax law. It indirectly taxes sales by taxing use. * * * The two acts are designed to reach all retail sales to Iowa consumers or users (with certain specified exceptions) *with a tax measured by two per cent of the sale price.* * * * [page 1388] We are apparently agreed the use-tax law (chapter 423, Code, 1946) is a revenue measure designed to supplement the sales-tax law by producing revenue * * * not

taxable under the latter." (Italics ours.) See also Michigan-Wisconsin Pipe Line Co. v. Johnson, 247 Iowa 583, 73 N.W.2d 820.

In Morrison-Knudsen Co. v. State Tax Commission, 242 Iowa 33, 38, 44 N.W.2d 449, 452, 41 A. L. R.2d 523, we said: "Our decisions have been careful to point out that the use-tax law is supplementary to the sales-tax law and protects Iowa dealers who must collect and pay a sales tax by placing them on a tax equality with competing out-of-state vendors whose sales are not subject to the sales tax. Also that the principal purpose of the use-tax law was to remedy the evil of out-of-state buying to escape the sales tax."

In Bruce Motor Freight, Inc., v. Lauterbach et al. (members of the State Tax Commission of Iowa), 247 Iowa 956, 960, 77 N.W.2d 613, 615, which opinion covered four other similar cases, all involving mandamus proceedings for the refund of use taxes, collected from plaintiffs, this court in affirming judgments for plaintiffs said of the Use Tax Act: "It is supplementary to the retail sales tax. It covers personal property not purchased in the state, but purchased for use in the state."

Like holdings may be found in decisions of courts in other jurisdictions. In Chicago Bridge & Iron Co. v. Johnson, 19 Cal.2d 162, 165, 119 P.2d 945, 947, the California Supreme Court said: "In approaching this problem it is first necessary to consider the purpose and object of the use tax. * * * One of these purposes is to make the coverage of the tax complete to the end that the retail sales tax * * * will not result in an unfair burden being placed upon the local retailer engaged solely in intrastate commerce as compared with the case where the property is purchased for use or storage in California and is used or stored in this state. *The two taxes are complemental to each other* with the aim of placing the local retailers and their out-of-state competitors on an equal footing. The fundamental principles to be considered in applying such an act are expressed in the case of Southern Pacific Co. v. Gallagher, 306 U. S. 167, 171, 59 S. Ct. 389, 390, 83 L. Ed. 586, as follows: 'The Use Tax Act is complemental to the California Retail Sales Act of 1933. The latter levies a tax upon the gross receipts of California retailers from sales of tangible personal property; the former imposes

an excise on the consumer at the same rate for the storage, use or other consumption in the state of such property when purchased from any retailer. *As property covered by the sales tax is exempt under the use tax, all tangible personalty sold or utilized in California is taxed once for the support of the state government.* Definitions in the Use Tax Act of taxpayer, retailer, storage and use are designed to make the coverage complete. * * *; use is the exercise of any right or power incident to ownership, except sale in the regular course of business; * * *.' " (Italics ours.)

In Alabama, as in Iowa, the Sales Tax Act and the Use Tax Act are in separate statutes. The first named applies to retail sales within the state. The Use Tax Act applies only to sales or purchases of goods made outside of the state and brought into it for use. For these reasons the two acts are referred to as being complementary, one to the other. The measure of each tax is two per cent of the retail sales price of the personal property. In Paramount-Richards Theatres, Inc. v. State, 256 Ala. 515, 526, 527, 529, 55 So.2d 812, 821, 822, 824, a decree affirming a use-tax assessment was reversed and remanded. After referring to the complementary character of the two acts, the supreme court said:

"It is therefore necessary that these two acts should be construed *in pari materia,* giving to each its separate field of operation. * * * *The technical means of confining the use tax to interstate sales or sales (purchases) made outside of the state is accomplished by exempting from the provisions of the use tax any property sold under such circumstances as would make the sale taxable under the provisions of the Sales Tax Act.* In other words, the Use Tax Act is drafted in such manner as to impose a use tax upon the use of tangible personal property within the state, at the same rate as the sales tax. *In order to limit the use tax to interstate transactions, the Act is so worded as to exempt from the measure of the tax all retail sales of tangible personal property made within the state. * * * But for this provision, the Use Tax Act would have the effect of imposing an additional tax in the same amount as imposed by the Sales Tax Act. In this way, retail sales made within the state would be subjected to a double tax.* [Italics ours.]

"In addition to imposing a sales tax or use tax upon or measured by the retail sale of tangible personal property, the legislature imposed a similar tax burden upon various shows, exhibits, amusements, theatres, etc., in which there was no sale of tangible personal property, but only the sale of tickets for the privilege of attendance or entrance. In taxing such businesses or activities the tax is imposed on the gross receipts, at the same percentage as applied to the retail sales of property and containing provisions requiring the passing on of the tax to the customer. * * * such tax is incorporated in the Sales Tax Act and no similar provisions appear in the Use Tax Act. * * * If there is no retail sale there is no taxable event under the Sales Tax or the Use Tax Act. * * *.

"In speaking of the exemptions contained in Sec. 789 of the Use Tax Act this Court in the case of State of Alabama v. Wilputte Coke Oven, Inc., 251 Ala. 271, 37 So.2d 197, 198, said: *'There is exempt from this tax property subject to the sales tax, Article 10, Title 51, which means that the use tax does not apply to property whose sale is effected in Alabama.'* * * *

"The same idea was expressed in the case of Layne Central Co. v. Curry, 243 Ala. 165, 8 So.2d 839. * * *

"Double taxation is permissible, it is true, but is, as a matter of policy, to be avoided whenever possible. 61 C. J. 137, sections 69, 70 and 71. * * * *But the fundamental theory of the sales or use tax is to impose the tax only once, which is usually accomplished by placing the levy upon the last or final sale, namely: the retail sale to the consumer.*" (Italics ours.)

As defined by Webster, the words "complementary" and "supplemental" mean "serving to fill out or complete", "mutually supplying each other's lack", "to fill deficiencies." Use-tax, sometimes called compensating-tax, statutes are designed to complement or supplement retail-sales-tax statutes, and not to duplicate the tax exacted by them. All authorities so hold. We note some of them: Bedford v. Colorado Fuel & Iron Corp., 102 Colo. 538, 81 P.2d 752, 753; Union Portland Cement Co. v. State Tax Comm., 110 Utah 135, 170 P.2d 164; Connecticut L. & P. Co. v. Walsh, 134 Conn. 295, 57 A.2d 128, 1 A. L. R.2d 453; Comptroller of Treasury v. Crofton Co., 198 Md. 398, 84 A.2d 86, 30 A. L. R.2d 1434; Continental Supply Co. v. People of State of

Wyoming, 54 Wyo. 185, 88 P.2d 488, 129 A. L. R. 217; Morley v. E. E. Barber Construction Co., 220 Ark. 485, 248 S.W.2d 689, 692; Miller Bros. Co. v. Maryland, 347 U. S. 340, 74 S. Ct. 535, 98 L. Ed. 744; Douglas Aircraft Co., Inc., v. Johnson, 13 Cal.2d 545, 90 P.2d 572, 575; Southwestern Bell Tel. Co. v. State Commission of Revenue and Taxation, 168 Kan. 227, 233, 212 P.2d 363, 367, where the court said: "There is one basic principle about our sales tax act. It is that the ultimate consumer should pay the tax and no article should have to carry more than one sales tax."

The appellants have cited no authority or court decision sustaining their position, and we have found none. All items of property covered by the Commission's audit, except not exceeding four articles, were ultimately sold by the plaintiff-appellee at retail sales, and the two per cent sales tax was accounted for to the state. The Use Tax Act was not enacted to impose a use tax of two per cent on tangible personal property which had already been subjected to, or was subject to, the two per cent sales tax. The sales of all of the property involved had been made in Iowa and there was no basis for a use-tax assessment.

III. There was no factual basis for the assessment and collection of a use tax with respect to this property. Code section 423.2, supra, provides that a use tax may not be imposed, unless the property subjected to it was purchased or brought into Iowa "for use in this state." The record does not establish such fact. It is all to the contrary. The uncontradicted testimony of Mr. Brown and Mr. Sampson is that they acquired the property for the purpose of "reselling it at retail"—which is just what they did. Mr. Sampson testified: "Our company is in the business of selling goods, wares, and merchandise for profit."

IV. Appellee brought itself within the exception of Code section 423.1(1) in that it established beyond question that all the property involved was sold "in the regular course of business."

V. The Commission does not question that all of the property was sold at retail and that sales taxes were exacted. The appellee thereby established its exemption from the payment of any use tax as provided by Code section 423.4(1).

The judgment and decree appealed from is—Affirmed.

GARFIELD, WENNERSTRUM, SMITH, HAYS, THOMPSON, LARSON, and PETERSON, JJ., concur.

### SUPPLEMENTAL OPINION

BLISS, J.—Subsequent to the filing of the original opinion herein on April 3, 1957 (reported in 82 N.W.2d 134), there has been argued and submitted to the court the question of the right of plaintiff to recover, and the liability of defendant Tax Commission to pay, interest on the amount exacted from plaintiff by defendant as use tax. The court has determined plaintiff is not entitled to recover, and defendant Commission is not liable for, interest on the amount exacted as use tax.

With this supplement to the original opinion a rehearing herein is hereby denied.

HAYS, C. J., and GARFIELD, WENNERSTRUM, SMITH, THOMPSON, LARSON, and PETERSON, JJ., concur.