**SOUTHWESTERN BELL TELEPHONE COMPANY, Respondent,**

**v.**

**M. E. MORRIS, Director of Revenue, Appellant.**

No. 48537.

Supreme Court of Missouri,

En Banc.

March 13, 1961.

Rehearing Denied April 10, 1961.

Thomas F. Eagleton, Atty. Gen., James E. Conway, Asst. Atty. Gen., for appellant.

John Mohler, Wm. C. Sullivan, St. Louis, Hendren & Andrae, Jefferson City, for respondent.

LEEDY, Judge.

By this administrative review proceeding Southwestern Bell Telephone Company has challenged the validity of assessments made upon purchases of certain tangible personal property made outside of Missouri, and subsequently used by it in this state in the rendition of its public utility services. The statute involved is the "Compensating Use Tax Law," §§ 144.600 to 144.745, RSMo 1959 and V.A.M.S., as added by Laws 1959, H.B. No. 35, §§ 1–30, which went into effect August 29, 1959, and the assessments in question arose out of purchases made by the protesting taxpayer during the first four months of the operation of that law. The extent of such purchases (and, correspondingly, an idea of the efficacy of the new law as a revenue measure) is reflected by the fact that the disputed tax amounts to more than $150,000, which sum Southwestern Bell paid under protest. The proceeding went to the Cole Circuit Court on petition for review (§ 144.685),[1] which court found the Act in question, the Compensating Use Tax Law, to be unconstitutional, and reversed the decision of the Director, decreed that no use tax was due or owing by plaintiff, and ordered that the taxes paid under protest be refunded to plaintiff, from which judgment the Director of Revenue has appealed.

Section 144.610 imposes the tax and reads, in pertinent part, as follows: "1. A tax is imposed for the privilege of storing, using or consuming within this state any

---

1. All statutory references are to RSMo 1959 and V.A.M.S., unless otherwise noted.

article of tangible personal property purchased on or after the effective date of sections 144.600 to 144.745 in an amount equivalent to two per cent of the sales price of the property. This tax does not apply with respect to the storage, use or consumption of any article of tangible personal property purchased, produced or manufactured outside this state until the transportation of the article has finally come to rest within this state or until the article has become commingled with the general mass of property of this state."

The next section, 144.615, specifies the exemptions, as follows:

"(1)  Property, the storage, use or consumption of which this state is prohibited from taxing under the constitution or laws of the United States or of this state;

"(2)  Property, the gross receipts from the sale of which are required to be included in the measure of the tax imposed under the Missouri sales tax law;

"(3)  Tangible personal property, the sale of which, if made in this state, would be exempt from or not subject to the Missouri sales tax under the provisions of subsection 2 of section 144.030 and section 144.-040, RSMo;

"(4)  Motor vehicle subject to the motor vehicle use tax;

"(5)  Tangible personal property which has been subjected to a tax by any other state in respect to its sales or use; provided, if said tax is less than the tax imposed by sections 144.600 to 144.745, said property, if otherwise taxable, shall be subject to a tax equal to the difference between said tax and the tax imposed by sections 144.600 to 144.745;

"(6)  Tangible personal property held by importers, manufacturers, wholesalers, or jobbers solely for resale in the regular course of business;

"(7)  Materials, manufactured goods, machinery and parts, which, when used in manufacturing, processing, compounding, fabrication or germination, become an integral part of the new personal property or service resulting from such manufacturing, processing, compounding, fabrication or germination and which new personal property or service is intended to be sold ultimately at retail for final use or consumption;

"(8)  Repair materials, replacement parts and equipment not readily obtainable in the state of Missouri purchased for use directly upon, and for the repair and maintenance of motor vehicles, railroad rolling stock or aircraft engaged in interstate or foreign commerce as common carriers of persons or property;

"(9)  Machinery and equipment, other than replacements, not readily obtainable in Missouri which are purchased for and used directly in manufacturing, mining, processing or producing a product which is intended to be sold ultimately for final use or consumption;

"(10)  Tangible personal property, not readily obtainable in the state of Missouri, which is used exclusively in the manufacturing, processing, modification or assembling of products sold to the United States government or to any agency of the United States government;

"(11)  Rental of films, records, or any type of sound or picture transcribing to radio and television broadcasting stations, directly used for broadcasting purposes;

"(12)  Personal and household effects and farm machinery used while an individual was a bona fide resident of another state and who thereafter became a resident of this state, or tangible personal property brought into the state by a nonresident for his own storage, use or consumption while temporarily within the state;

"(13)  Animals or poultry used for breeding or feeding purposes."

The first six of the foregoing exemptions are not in controversy. It will be seen that they are more or less conventional in form

and substance. Those numbered (7) through (11), and particularly (7) and (9), are the ones directly giving rise to some of the questions sought to be raised on this particular appeal.

The bulk of respondent's out-of-state purchases of property whereon the state seeks to impose the use tax consisted of central office equipment, telephone instruments and other station apparatus, and outside plant, including poles, cable, wire and conduit, all of which were admittedly used in the operation of the telephone company's business, in the conduct of which it rendered among other communications services the following: Voice communication, transmission of teletype wire and telegraph messages, and the transmission of radio and television broadcasts.

Southwestern Bell claimed below, and reasserts here (in answer to appellant's assignment that the court erred in finding the Act unconstitutional), that by reason of exemptions (7) and (9) it is exempt from the imposition of the tax as to the property in question; and, alternatively, it claims that if exemptions (7) and (9) be not so construed, then the whole Act is rendered unconstitutional because of those very exemptions, as well as others.

In this situation, we examine first the question of the constitutionality of the Act as affected by the provisions of exemptions (7) and (9), irrespective of whether respondent's purchases are or are not to be deemed within either the spirit or letter of those exemptions, this because, if such exemptions or either of them render the Act unconstitutional, it would avail respondent nothing to find that the questioned purchases were within the literal meaning of an invalid exemption. The state's brief was confined to the constitutional issue, but respondent took the position in its brief that the issue of construction of the two exemption sections was properly before the court, since the construction urged by it would sustain the circuit court's judgment should this court hold the Act to be constitutional. There is nothing to indicate that the court construed the exemption provisions except as undoubtedly bearing on the constitutional issue. The matter of construction is dealt with by appellant only in its reply brief. The judgment below does not indicate the grounds or reasons on which its finding of unconstitutionality was based. This case and Missouri Pacific Railroad Co. et al. v. Morris et al., Mo., 345 S.W.2d 52, concurrently decided herewith, are companion cases and were submitted on the same day. They are test cases and in challenging the constitutionality of the Act both invoke precisely the same constitutional provisions, so to this extent they are as closely related as twins. In these circumstances, and because the questions presented are of public interest and concern, we shall consider the briefs in both cases in determining the constitutional issue.

■ It is contended that the Act is void (among other reasons) because contrary to the Constitution of Missouri, V.A.M.S., and particularly § 3 of Art. X and §§ 2 and 10 of Art. I, and contrary to the Constitution of the United States, and particularly Amendment XIV thereof, in that such law denies respondent equal protection of the law by imposing a tax upon the use of property by respondent while exempting from such tax the use of equivalent and corresponding property by other members of the same class. This is another way of saying, as does the brief in the companion case, that the exemptions are not based on differences reasonably related to the purpose of the law, and thereby establish unreasonable, arbitrary and discriminatory classifications, in violation of the constitutional provisions last above mentioned. The cases of State ex rel. Transport Mfg. & Equip. Co. v. Bates, 359 Mo. 1002, 224 S.W.2d 996, and City of Cape Girardeau v. Fred A. Groves Motor Co., 346 Mo. 762, 142 S.W.2d 1040, exemplify the required constitutional principle of uniformity thus invoked. In the former our original use tax act (Laws 1947, Vol. II, p. 431 et seq., which was selective in nature, being limited

to motor vehicles required to be registered in Missouri) was declared unconstitutional because exempting motor vehicles having a seating capacity of ten passengers or more, thus arbitrarily excising out of the class created for the purposes of the act a sizeable segment naturally falling within such classification. In the Groves Motor Company case an ordinance imposing a license tax was held to be violative of the same uniformity provisions of our 1875 constitution, and therefore unconstitutional and void, because establishing different measures for the tax upon automobile dealers who had not been engaged in such business during the preceding calendar year and upon automobile dealers who had been engaged in such business during the preceding calendar year. The following cases attest the proposition that it is arbitrary discrimination violating the equal protection clause of the Fourteenth Amendment to make exclusions not based on differences reasonably related to the purposes of the act: Petitt v. Field et al., Mo., 341 S.W.2d 106; Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485. See, also, City of Kansas City v. Grush, 151 Mo. 128, 52 S.W. 286; State on inf. Taylor v. Currency Services, Inc., 358 Mo. 983, 218 S.W.2d 600; State ex rel. Rolston v. Chicago, B. & Q. R. Co., 246 Mo. 512, 152 S.W. 28, and Heil v. Kauffman, 354 Mo. 271, 189 S.W.2d 276.

■ The constitutional question posed makes the nature and purpose of our Use Tax Act of controlling importance. A compensating use tax such as the one now under scrutiny has been aptly characterized as " * * * a levy on the privilege of using within the taxing state property purchased outside the state, if the property would have been subject to the sales tax had it been purchased at home." Paul J. Hartman, Professor of Law, Vanderbilt University, January 1961 Bulletin, Section of Taxation, American Bar Ass'n, p. 32. This concept is sometimes spelled out in terms in the statute itself, as in the case of Kansas: "All property purchased or leased within or without this state and subsequently used, stored or consumed in this state shall be subject to the compensating tax if the same property or transaction would have been subject to the Kansas retailers' sales tax had the transaction been wholly within this state." G.S.1949, § 79–3703, as amended.

■ It seems to be universally considered that the use tax and sales tax laws are complementary and supplementary to each other. This court took that view quite definitely in State ex rel. Transport Mfg. & Equip. Co. v. Bates, supra, by saying (224 S.W.2d loc. cit. 999): "But the sales taxes and use taxes here under consideration are naturally related. *In their every characteristic they are designed and enacted to supplement and complement each other.* The legislative intention as to this use tax is to so complement the sales tax on motor vehicles that motor vehicles sold in or used in the state attain a parity of taxation for the support of the state government. [Citing cases.]" (Emphasis supplied.)

The universality of opinion on the proposition is indicated by the syllabi set forth below which we have taken at random from reported cases throughout the country (emphasis supplied in each instance):

"Obvious purpose and effect of use tax is to *complement retail sales tax* by imposing, in respect of purchases made outside state for use in state, compensating use tax and thereby avoiding unfair discrimination and promoting equality between dealers within state and those in other states, and between purchasers of goods in state and purchasers of goods outside state for use within state." Comptroller of Treasury v. Crofton Co., 198 Md. 393, 84 A.2d 86, 87, 30 A.L.R.2d 1434.

"Use Tax Act was enacted for purpose of levying and collecting a specific tax for the privilege of using, storing or consuming tangible personal property and the use tax is *complementary to the sales tax.*" Don McCullagh, Inc. v. State, 354 Mich. 413, 93 N.W.2d 252.

"Primary function of the use tax is to *complement the sales tax* to make uniform taxation of property subject to the tax, whether produced, purchased and used in the state, or produced and purchased in another state or country, but used in the state." United States Gypsum Co. v. Green, Fla., 110 So.2d 409.

"The use tax is a revenue measure designed to *supplement and protect sales tax* by removing any incentive to purchase outside of Iowa to escape sales tax and to protect Iowa dealers by placing their sales upon a tax equality with those of outside competitors." Northern Natural Gas Co. v. Lauterbach, Iowa, 100 N.W.2d 908.

"The Iowa use tax is *complementary or supplementary to the sales tax,* and is not designed to duplicate it." Herman M. Brown Co. v. Johnson, 248 Iowa 1143, 82 N.W.2d 134, 135, 84 N.W.2d 44.

"Typical use tax is not imposed for privilege of doing business but to *compensate the sales tax* by permitting taxation of property brought into and used within limits of the taxing authority under circumstances that prevent collection of sales tax." Niagara Junction Ry. Co. v. Creagh, 2 A.D.2d 299, 154 N.Y.S.2d 229.

"The use tax is intended to *complement the sales tax* by creating equality of taxation of purchasers on use of property purchased outside the state, being designed to reach transactions which cannot be reached as sales because of commerce clause of federal Constitution." Avco Manufacturing Corp. v. Connelly, 145 Conn. 161, 140 A.2d 479, 480.

This principle was applied by the Supreme Court of Utah in Union Portland Cement Co. v. State Tax Commission, 110 Utah 152, 176 P.2d 879, 881, where it was held that "the Sales and Use Tax Acts are to be considered as correlative and complementary and that, as far as exemptions are concerned, legislative created specific exemptions from the sales tax are also to be treated as exemptions from the use tax."

But the court went on to point out that exemptions which arise because of paramount law are not in the same class with exemptions created by the legislature because, in reality, the former are not exemptions created by the act. "Something which is not taxable by paramount law cannot be said to be exempt by force of a provision which purports to create an exemption. Such provision is in effect, only a recognition of the fact that such items are not reachable by the law in which the purported exemption appears. * * * But when the legislature by the specific language of the Sales Tax Act carves out of those sales which it has power to tax specific sales and exempts them from the sales tax it clearly evidences a desire to exempt the property so sold from the 2% tax, whether imposed by the Use or Sales Tax Act. To hold otherwise would practically nullify the obvious legislative intent." There the Sales Tax Act had been amended so as to exempt certain coal, but there had been no corresponding amendment of the Use Tax Act to exempt such coal. The interpretation contended for by the taxing authorities was that although exempt from the sales tax, the coal was nevertheless subject to the use tax, and this the court denied for the reasons above stated.

On this subject it is not inappropriate to point out that, "The discrimination difficulties encountered in sales taxation become more acute when the field of compensating use taxes is entered. * * * In order that use taxes will not be held discriminatory against interstate commerce, it must be shown that there is an equivalent burden on the purchase of merchandise locally. For that reason it is necessary to find a tax on local purchases supplementary to the use tax." 38 Columbia Law Review, pp. 63, 66. This of itself is of sufficient import to necessitate the rule of the cases above cited that our two acts are complementary and supplementary.

In the light of these principles it is not surprising to find the Illinois Supreme

Court ruling directly that the Use Tax Act "is designed to complement and to protect the tax imposed upon the occupation of selling at retail [sales tax], *and the validity of its exemptions is to be determined in the light of that purpose.*" (Emphasis supplied.) Turner v. Wright, 11 Ill.2d 161, 142 N.E.2d 84, 89. We are in complete agreement with this holding. Under it, how stand exemptions (7) and (9)?

■ We think exemption (9) is invalid because instead of protecting the potential of the tax base as established by the Sales Tax Act, § 144.010 et seq., it actually invades and, to the extent of its reach, destroys such base. This is obviously so because "machinery and equipment, other than replacements" which are purchased in this state "for and used directly in manufacturing, mining, processing or producing a product which is intended to be sold ultimately for final use or consumption" are not exempt under the Sales Tax Act. The exemption of such items from the use tax is not based on differences reasonably related to the purposes of the law, discriminates against similar property purchased locally for the same purposes, and thereby creates an unreasonable, arbitrary and discriminatory classification, in violation of § 3, Art. X of the Constitution, and the equal protection and due process provisions of the Federal and State Constitutions.

■ The provisions of (7), insofar as they exempt "materials, manufactured goods, machinery and parts, which, when used in manufacturing, processing, compounding, fabrication or germination, become an integral part of the *new personal property* * * * resulting from such manufacturing, processing, compounding, fabrication or germination and which *new personal property* * * * is intended to be sold ultimately at retail for final use or consumption" (becoming thereby taxable under the Sales Tax Act), are unobjectionable, but, ironically, wholly unnecessary to accomplish that purpose. This is because

tangible personal property of the type and under the conditions mentioned in that part of said exemption (7) was already exempt by force of the interplay of certain other provisions of the two acts, as will appear from the following references to such statutes.

As has been seen, § 144.610 imposes a tax "for the privilege of storing, using or consuming within this state *any article of tangible personal property* purchased on or after the effective date" of the act, etc. Section 144.605(8) defines "tangible personal property" as meaning "all items subject to the Missouri sales tax as provided in section 144.020, (1) and (3) RSMo." The latter of these subparagraphs, (3) is not pertinent to our question, so it need not be noticed. Section 144.020(1) levies a sales tax upon "every *retail* sale in this state of tangible personal property," etc. However, sales of tangible personal property to the purchaser "for resale in any form as tangible personal property" are not within the statutory meaning of "sale at retail" as defined by § 144.010(8) of the Sales Tax Act, said term being defined, insofar as here pertinent, as follows: "'Sale at retail' means any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption *and not for resale in any form as tangible personal property,* for a valuable consideration; * * *." (Emphasis supplied.)

Accordingly, the provisions concerned with the use of tangible personal property resulting in "new personal property" from the alternative methods of production specified in exemption (7), insofar as they purport to create or carve out exemptions, may be disregarded for present purposes because, in effect, they merely duplicate the exemption (or, more accurately, exclusion) of such property which already existed by reason of the definitions of terms in, and the operation of, the two acts, as we have just seen.

What has just been said thus leaves for consideration the provisions of exemption (7) with respect to its "services" aspect, and by which it was sought to extend shelter from the use tax to those so-called service industries coming within its terms. Under the Sales Tax Act locally purchased tangible personal property used or consumed by telephone companies, railroad and other public utilities, places of amusement, etc., (in fact, all of the divers services subject to the sales tax) in producing their services is subject to the sales tax (except fuel consumed in the circumstances mentioned in § 144.030, par. 2). The "services" provisions now under examination would exempt from the use tax like property used for the same purposes, if purchased out of state. In so discriminating against locally purchased tangible personal property (subject to the sales tax), contrary to the basic purpose of the act as a whole, this exemption is indistinguishable from exemption (9), and we are therefore compelled to, and do hold it to be unconstitutional and void for precisely the same reasons that exemption (9) was so declared.

We are of the opinion that these invalid exemptions render the entire Act void unless saved by the severability clause. But that clause is so direct and significant as to leave no doubt that if any exemption provision be found unconstitutional that it was the plain legislative intent that the tax be imposed on any use that had been unconstitutionally exempted. Such severability clause appears as § 31 of H.B. 35, supra (which is not carried forward into the Revised Statutes nor V.A.M.S.), and reads as follows:

"Section 31. If any provision of this act, including any provision exempting the use of property from the tax imposed by this act other than section 4 hereof, is found to be unconstitutional the remaining provisions are to be treated as being in full force and effect. The legislature hereby declares that, if any exemption of the use of property from taxation contained in this act is invalid under the constitution, it intended to and does hereby impose the same tax on such exempted use as is imposed on the use of all other property made subject to the tax imposed by this act."

Under the plain mandate of the foregoing section, we hold that notwithstanding the invalidity of exemptions (7) and (9), the other and remaining portions of the Act here questioned stand in full force and vigor. The judgment is therefore reversed, and the cause remanded with directions to enter judgment in favor of appellant in conformity with the views herein expressed.

All concur.