**DISTRICT OF COLUMBIA**

v.

**SEVEN–UP WASHINGTON, Inc.**

**DISTRICT OF COLUMBIA**

v.

**DR. PEPPER BOTTLING CO., OF WASHINGTON, D. C., Inc.**

**DISTRICT OF COLUMBIA**

v.

**PEPSI–COLA BOTTLING CO. OF WASHINGTON.**

**DISTRICT OF COLUMBIA**

v.

**PFAN.**

**DISTRICT OF COLUMBIA**

v.

**ROCK CREEK GINGER ALE CO., Inc.**

**Nos. 11704–11708.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 20, 1953.

Decided Jan. 14, 1954.

Writ of Certiorari Denied June 1, 1954.

See 74 S.Ct. 851.

Mr. George C. Updegraff, Asst. Corp. Counsel for the Dist. of Columbia, with whom Messrs. Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, and Harry L. Walker, Asst. Corp. Counsel, were on the brief, for petitioner.

Mr. Stephen G. Ingham, Washington, D. C., with whom Mr. William E. Furey, Washington, D. C., was on the brief, for respondents.

Before PRETTYMAN, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The District of Columbia appeals from decisions of the District of Columbia Tax Court holding erroneous certain use tax assessments, measured by the amounts paid by respondents for bottles, cardboard cartons, and wooden cases bought new and used in their soft drink businesses.

The use, storage, or consumption of tangible personal property purchased outside but used within the District is subject to the use tax unless the purpose of the purchaser is to resell the same in the form received, or to use or incorporate it as a material or part of other property to be produced for sale by manufacturing, assembling, processing, or refining. District of Columbia Use Tax Act, 63 Stat. 124 et seq., §§ 47–2701.1 (a), 47–2702, D.C.Code 1951. See Hotels Statler Co. v. District of Columbia, 91 U.S.App.D.C. 122, 199 F.2d 172, and Briggs & Co. v. District of Columbia, 90 U.S.App.D.C. 404, 196 F.2d 241. Here the question is whether the Tax Court rightly concluded that the bottles, cartons, and cases were purchased for the purpose of resale in the form received, and therefore that the assessments were erroneous.[1]

The court made findings of fact[2] which are undisputed and may be summarized as follows: Respondents have engaged in the District of Columbia in the manufacture, bottling, and sale of soft drinks. They sell and distribute the drinks, in cartons and wooden cases, to grocers and other distributors who in turn sell them to the ultimate consumers of the drinks. Some of the cases are divided into 24 sections, each section holding one bottle; others into 4 sections, each holding a cardboard carton of six bottles; and others into 12 sections, each containing one bottle.[3] All bottles, cartons and cases during the relevant periods were marked with the name of the soft drink and many, in addition, carried the respective trademarks, slogans, or trade names of respondents. None bore any specific legend of ownership.[4]

1. (a) The tax is computed at the rate of 2 per centum of the purchase price of the property.

(b) The provision excluding from the tax property purchased to be used or incorporated as a material or part of other property is not involved or relied upon by any party to these proceedings.

2. The findings in the Ralph Pfan, t/a Barq's Bottling Co. case are less exten-

sive than in the other cases by virtue of a stipulation that since the facts are comparable the decision is to be governed by the result in the companion cases.

3. Only The Rock Creek Ginger Ale Co., Inc., used the twelve-section case.

4. Prior to January 1, 1950, the Rock Creek cases had stamped thereon the legend: "Property of Rock Creek Gin-

The cost of the cases to respondents ranged from 83 cents to $1.03 apiece, of the bottles from 4 to over 5 cents, and of the cardboard cartons from 3 to 3½ cents. The total cost of each 24 bottle case thus varied from $1.79 to $2.23, without the cartons, and from $1.91 to $2.37 with them.[5] A case of bottled drinks was sold by respondents to their customers at prices varying from $1.30 to $1.56, covering the fluid contents, bottles, case, and, if any, cartons. Though no agreement existed between respondents and their customers for return or repurchase of the containers, nevertheless it was understood respondents would pay or give credit of two cents for each empty case and each empty bottle returned, making a total of 50 cents for a case with 24 empty bottles.[6] Nothing was paid for return of the cartons. Unless the empty bottles and cases were returned in large numbers respondents could not have remained in business, since the amounts they paid for the containers new were considerably more than they received for them when filled.[7] The economic life of each respondent thus depended upon a continuous reuse of a large number of the same bottles and cases.

In filing returns for District personal property tax respondents listed a substantial amount for bottles and cases in the schedule of supplies, raw materials, and work in process. In its District income tax return Rock Creek charged against income, as a cost of goods sold, the cost of bottles and cases bought new during the year, and also the amounts paid customers upon return of bottles or cases. Seven-Up and Dr. Pepper charged as a cost of goods sold the difference between the cost of the cases and bottles new and the amount for which they claim they were sold to customers.[8] No respondent, however, claimed depreciation.

These undisputed findings are followed in the Tax Court's decision by its conclusions of law, which the District does dispute. The court concluded that in distributing the soft drinks respondents sold the cases, bottles and cartons to their customers, to whom title passed without obligation on their part to return the articles but with an option to do so upon receipt of the amount understood to be paid upon such return. The court also concluded that all cases, bottles and cartons purchased new and those returned by customers were purchased by respondents for resale in the same form in which received and, therefore, that the assessments were erroneous under § 47–2701.1 (a), D.C.Code 1951.[9]

---

ger Ale Co."; and the sales slips contained the following printed statements: "Bottles and Cases are Not Sold. A Deposit is Required." The use of cases so marked was discontinued by Rock Creek from and after January 1, 1950, and there was substituted for the old sales slip language the following: "The sales price includes bottles and cases. Returns will be purchased at our established prices."

5. Rock Creek paid over 6 cents a bottle for the large size bottle contained in its twelve-bottle case. The record discloses no finding as to the amount paid by Rock Creek for the cases used to contain the large size bottle. If it be assumed they were able to purchase the cases for the minimum amount paid by other respondents, viz., 83 cents, the total cost to Rock Creek of the twelve-bottle case was $1.55; which, compared to its sale price of $1.70 for the twelve-bottle case, would

make it the only instance where profit was made upon a sale involving a new case and new bottles.

6. Rock Creek refunded 5 cents a bottle on the large size, 10 cents a case for the twelve-section case, and 12 cents a case for the twenty-four section ones.

7. The Tax Court, in its findings in the Dr. Pepper case, states: " * * * In other words, the arrangement whereby petitioner [now respondent] paid or gave credit of 50 cents upon the receipt by it from its customers of a wood case and 24 empty bottles was essential to the continuation of its business under the prices it charged for such containers filled with its products."

8. It does not appear what amounts were charged by Pepsi-Cola or Barq's.

9. As hereinabove noted, the provisions of this section exclude from the tax a sale

Our review is guided by § 47–2404(a), D.C.Code 1951, as amended, 66 Stat. 544 (1952).[10] Our acceptance of the facts as found by the Tax Court does not require acceptance also of its conclusions of law. Regard for the special function and competence of the Tax Court does not warrant avoiding our responsibility of reaching a decision of our own as to the application of the law to the facts. Even if its ultimate conclusions, stated by the Tax Court to be conclusions of law, should be considered as factual they are not accepted by this court if we consider them to be clearly erroneous. Rule 52(a), Fed.R.Civ.P., 28 U.S.C.A.[11]

Applying these principles, and having in mind that no question is presented as to the credibility of witnesses or the like, but only as to the ultimate conclusion to be drawn from accepted findings, we think the Tax Court erred in holding that purchases of the bottles and cases by respondents were for the purpose of resale to their customers. The purpose was to use them, not to resell them. Respondents are not in the business of selling bottles or cases but of using them as a means of marketing their soft drinks. We have seen that a charge is made, or a deposit required, for the containers, and that a high percentage of them are returned, whereupon a credit for the charge or deposit is given, or its amount is refunded in cash. We have seen also that this amount is much less than the value of the containers. If full value were charged, sale of the soft drinks themselves would be impeded because of the larger outlay required of purchasers. Yet the fact that some charge is made for the containers, with refund available, induces their return, because respondents' customers, like respondents, also are not in the business of buying and selling bottles and cases, but soft drinks. When we advert further to the fact that except for this constant return of bottles and cases the respondents' businesses could not survive, because the charge or deposit required for the containers is less than their cost, the true purpose of their purchase is apparent. It is to use and reuse them. Respondents do not purchase a wooden case for 83 cents and 24 empty bottles for 4 cents each, making a total of $1.79, to re-

"in which the purpose of the purchaser is to resell the property so transferred in the form in which the same is, or is to be, received by him * * *."

10. "* * * Upon such review the court shall have the power to affirm, modify, or reverse the decision of the Board with or without remanding the case for hearing as justice may require. The court shall have the exclusive jurisdiction to review the decisions of the Board in the same manner and to the same extent as decisions of the United States District Court for the District of Columbia in civil actions tried without a jury * * *."

"The Board of Tax Appeals for the District of Columbia shall hereafter be known as the District of Columbia Tax Court * * *." 66 Stat. 547 (1952).

11. Prior to the 1952 amendment, see note 10, supra, the scope of review of decisions of the District of Columbia Tax Court [then the Board of Tax Appeals] was governed by the decision in District of Columbia v. Pace, 320 U.S. 698, 64 S.Ct. 406, 88 L.Ed. 408, affirming 77 U.S.App.D.C. 332, 135 F.2d 249, wherein the Supreme Court construed the statute to allow review "as under the equity practice in which the whole case, both facts and law, is open for consideration in the appellate court, subject to the long-standing rule that findings of fact are treated as presumptively correct and are accepted unless clearly wrong." The Court stated that if Rule 52 be thought to prescribe a different scope of review, it could not be considered as superseding a special statutory direction applicable to a special, local tribunal.

Prior to 1948 findings of fact by the Board of Tax Appeals for the District of Columbia were not accorded the same finality as findings of the Tax Court of the United States. See Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. In 1948 § 1141 of the Internal Revenue Code was amended, 26 U.S.C.A. § 1141, to provide for review of decisions of the Tax Court of the United States in substantially the same terms as now govern review of District of Columbia Tax Court decisions. Cf. note 10, supra.

sell for $1.30 after filling them with their soft drink products.

We realize the force of the argument that if the transactions between respondents and their customers constitute sales of the containers, as held in a number of cases reviewed by the Tax Court, then the purchase of them by respondents is for resale. But the exclusionary provisions of § 47–2701.1(a) surely were not intended to apply merely because as between respondents and their customers a sale of the containers occurs. Use of them by respondents also occurs; and assuming that following such use a sale is made it is not one which necessarily relieves of the use tax. It is not a sale in any ordinary sense, whereby respondents' customers buy for their own purposes. As soon as feasible they resell to their customers, and, upon receiving back from them the empty containers, these are returned to respondents for further use. Thus the "sale" or "buying" aspect of the dealing between respondents and their customers is overshadowed by respondents' use. We must keep in mind that the statute does not provide that the tax shall not apply whenever there is a resale; it is only when the purpose of the purchase is to resell. The true purpose here is not to resell but to use, even if this use is made possible in part through the form of resale and repurchase. In fairness to the Congressional purpose we must view the situation as a whole, in its substance, and not restricted solely to its form. Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916; Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981; Helvering v. Tyler, 8 Cir., 111 F.2d 422, 426, affirmed 312 U.S. 657, 61 S.Ct.

729, 85 L.Ed. 1105. We conclude that respondents' dominant purpose in acquiring the bottles and cases was not to resell them but to secure their availability for recurring use in marketing their products and accordingly that the assessments for the use of the bottles and cases were valid. We are supported in this conclusion by the decisions in Gay v. Canada Dry Bottling Co. of Florida, Fla., 59 So.2d 788, and Owens-Illinois Pacific Coast Co. v. St. Bd. of Equalization, 1 P–H, Cal. State and Local Tax Service, ¶ 23,001. See also, Hotels Statler Co. v. District of Columbia, supra.[12] A contrary view finds support in decisions reviewed at length in the opinion below. These include Dewey Portland Cement Co. v. Crooks, 8 Cir., 57 F.2d 499; Buck v. Commissioner of Internal Revenue, 9 Cir., 83 F.2d 627, and Goebel Brewing Co. v. State Board of Tax Administration, 306 Mich. 222, 10 N.W.2d 835. See, also, Evans v. Memphis Dairy Exchange, 194 Tenn. 317, 250 S.W.2d 547.

The reasonableness of a construction can often be tested by considering the consequences of a different one. If we were to hold that respondents' purchases were for the purpose of resale within the meaning of § 47–2701.1(a), it would follow that the same purpose should be attributed to respondents' customers, the retail dealers, who buy from respondents, for they in turn sell the drinks in bottles and cases to ultimate consumers. No sales taxes could be assessed on such sales by respondents.[13] So too, the ultimate consumers to whom respondents' customers sell the soft drinks would be buying the bottles and cases, which, however, find their way back to their immediate vendors. The latter, in turn, would be repurchasing them in order to

12. Though inapplicable because of its particular wording, § 1102(c) of the Regulations promulgated by the Commissioners of the District of Columbia (cf. note 15, infra) appears to lend support to our conclusion.

13. Inasmuch as these sales are made within the District it is the sales rather than the use tax which would be involved.

The sales tax is levied upon "retail sales" within the District, while the compensating use tax reaches the use of property purchased at "retail sale" outside but used within the District. For the purposes of each tax, however, "retail sale" is defined to exclude sales of property purchased for resale in the form received

resell them to respondents. Thus the many "sales" of the containers, and their vast, continued commercial use, would bear no tax. And even if it were held that the purchases by respondents' customers and the ultimate consumers were not for the purpose of resale, and accordingly were taxable, the amounts involved in such purchases are only the amounts of the deposits, a fraction of the original price paid by respondents for the containers. The tax would be levied only on this fractional amount, a result out of accord with reality.

As to the cartons, however, we agree with the Tax Court. We do not find the same factual basis for holding that they are purchased for use rather than for resale. There is no arrangement whereby they are drawn back into more or less constant use by respondents. They are delivered with the bottled drinks, no deposit is required for them, no credit or refund is given upon their return, and there is no evidence of their being returned in large numbers.

Nevertheless we cannot say with complete assurance that they are purchased for resale. The sale price of the drinks is the same whether or not the cartons are delivered. Moreover, use of the labeled cartons as valuable advertising survives the sale to respondents' customers and continues as long as the cartons are in existence.[14]

With the facts thus pointing toward conflicting conclusions we turn to the Regulations promulgated by the District Commissioners, on July 12, 1949, applicable to both sales and use taxes.[15] § 1102(b) of these Regulations refers to containers, including cartons, and says that receipts from sales of these articles are not subject to tax when they are "purchased for delivery with other tangible property sold by the purchaser". On the other hand, § 1102(d) deals with containers purchased by vendees who render services not subject to the sales tax but use the containers in their businesses. Receipts from sales of wrapping paper to a dry cleaner who does not sell at retail but who uses the paper in his business is given as illustrative. Such receipts are said to be subject to tax.

Respondents' sales of soft drinks are not subject to the sales tax because of the food exemption. §§ 47–2706, 47–2701.10, 47–2605(d) (1), 47–2601.7, D.C. Code 1951. Assimilating the situation to the tax-free services referred to in § 1102(d), it can be argued that the cartons are consumed by respondents like the wrapping paper used by the dry cleaners, and so should bear the tax. On the other hand, assimilating the situation to the sales referred to in § 1102(b), it can be said the cartons are purchased for delivery with the soft drinks sold by respondents, and so should not bear the tax. While § 1102(b) might be intended to apply only to taxable sales, and not to those within the food exemption, and § 1102(d) to such non-taxable transactions as the latter, we are disposed in this ambiguous state of the Regulations to follow the lead of the Tax Court. We accordingly hold that the purchase of the cartons is covered by § 1102(b) of the Regulations. Under the statute as thus construed the use tax here involved does not apply.

An order will be entered affirming the decision of the Tax Court as to the cartons, and reversing as to the bottles and wooden cases for the period covered by the assessments held by that court to be erroneous.[16]

It is so ordered.

---

14. The cartons are not used or incorporated as a material or part of other property to be produced for sale, and so their purchase is not relieved of the tax on that account. See § 47–2701. 1(a), and Hotels Statler Co. v. District of Columbia, supra; Briggs & Co. v. District of Columbia, supra.

15. Reported in 1 CCH All-State Sales Tax Reporter, ¶ 29,533, P–H, D.C. State and Local Tax Service, ¶ 21,611.

16. Our decision is limited to the application of the use tax. We express no opinion as to whether a claim for depreciation should be allowed if asserted, or on other questions involved in District per-

PRETTYMAN, Circuit Judge (concurring).

I concur in the result, and I agree with the majority that the cases and bottles were purchased by petitioners for use in their respective businesses and the purchases were therefore subject to the use tax; and I agree that the purchases of the cardboard cartons were within Section 1102(b) of the Regulations and therefore not taxable.

sonal property taxes or District or Federal income taxes. See, e.g., Iten Biscuit Co., 25 B.T.A. 870, and other cases referred to in the opinion of the Tax Court.