**SMITH BEVERAGE COMPANY OF CO-LUMBIA, INC., et al., Respondents,**

v.

**James R. SPRADLING, Director of the Department of Revenue of the State of Missouri, Appellant.**

**No. 59084.**

Supreme Court of Missouri, Division No. 2.

March 8, 1976.

Robert House, Asst. Atty. Gen., Jefferson City, for appellant.

Cullen Coil and Carson, Monaco, Coil & Riley, Jefferson City, for respondents.

HENRY I. EAGER, Special Commissioner.

This is a declaratory judgment suit filed as a class action by three members of the Missouri Soft Drink Association. The defendant is the Director of the Missouri Department of Revenue. The case, on the merits, involves a construction of certain revenue laws and we have jurisdiction. The purpose of the suit is to obtain a declaration and judgment that a portion of amended Rule 34 of the Department is invalid, and to enjoin its enforcement. Stated more specifically, the object is to enjoin the collection of a use tax upon the purchase of soft drink bottles by the bottlers, as purchased from outstate suppliers. Plaintiffs had paid certain of these taxes under protest. That portion of the Rule, which is attacked here, reads as follows: "A vendor who packages or bottles tangible personal property into a reusable container and will charge a refundable deposit on those containers is considered to be the consumer of those containers. Thus, this vendor (bottler) shall pay sales or use tax to his supplier at the time he purchases those containers." It is the contention of plaintiffs that the quoted portion of the Rule is not authorized or permitted by the Sales-Use Tax Statutes, and that the imposition of the tax is specifically excluded thereby. Defendant, of course, denies that contention.

■ Section 144.610 * (Use Tax) provides that "A tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property * * * ." It is elementary that the Use Tax is complementary to the Sales Tax and is intended to tax transactions in which no Sales Tax can be imposed because the sale is not made in Missouri. *Southwestern Bell Telephone Co. v. Morris*, 345 S.W.2d 62 (Mo. banc 1961). Section 144.615, setting out "Exemptions" from the Use Tax, includes as paragraph (6): "Tangible personal property held by processors, retailers, importers, manufacturers, wholesalers, or jobbers *solely for resale* in the regular course of business; * * * *" (Italics ours.)

The application of that exemption to the situation in this case raises the first, and perhaps the principal, issue in the case. A secondary issue, if the case ever proceeds that far, is whether § 144.011, as amended in 1973 (Laws 1973, p. 223, Vol. 10, V.A. M.S., Supplement), has any effect on the controversy and, if so, what? It reads as follows: "For purposes of sections 144.010 to 144.510 and the tax imposed thereby, the definition of 'sale at retail' shall not be construed to include the transfer of reusable containers used in connection with the sale of tangible personal property contained therein for which a deposit is required and refunded on return." It will be unnecessary for us to reach that question here. Other sections of the statutes are cited and discussed in the briefs, including definitions, but in our view of the present situation they are now immaterial.

It is obvious that the first issue to be resolved, if the matter is to be determined on the merits, is whether the transfer of *bottles*, by plaintiffs to "retailers and other institutions" is or is not a *sale*; or, to be more specific, whether the bottles when purchased by plaintiffs are held by them (and their class members) "*solely for resale in the regular course of business.*" Defendant admits that plaintiffs are jobbers of the soft drinks but not of the bottles, and he denies in his brief that there was or is any *sale* of the bottles. His theory apparently is that there is merely a loan or bailment.

■ The difficulty in this situation is that there *is no evidence*, there are *no admissions, and there is no stipulation* from which this issue can intelligently be resolved. The only evidence concerned the propriety of the class action. Plaintiffs had

---

* All citations of statutes are to RSMo 1969, unless otherwise stated.

and have the burden of proof. The only thing admitted in the pleadings which could possibly affect the question is the allegation in the petition that "all of said plaintiffs are jobbers who bottle and sell carbonated beverages to retailers and other institutions who in turn sell the beverages in reusable bottles to others." This allegation was admitted in the answer. At best, it can only be taken as an admission that reusable bottles were used by the retailers, with an inference that they were also used by the bottlers. Plaintiffs allege a conclusion that they are "jobbers" and that they "hold the bottles solely for resale * * * ." That allegation was denied; most assuredly it can add nothing by way of a showing of existing facts.

On the issue of *sale or no sale*, the parties cite, pro and con, the following cases from other states: *District of Columbia v. Seven-Up Washington, Inc.*, 93 U.S.App.D.C. 272, 214 F.2d 197 (CCA 1954); *Arkansas Beverage Co. v. Heath*, 521 S.W.2d 835 (Ark. 1975); *Gay v. Canada Dry Bottling Co. of Florida, Inc.*, 59 So.2d 788 (Fla.1952); *Goebel Brewing Co. v. Brown*, 306 Mich. 222, 10 N.W.2d 835 (1943); *Belleville Dr. Pepper et al. v. Korshak*, 36 Ill.2d 352, 221 N.E.2d 635 (1966); *Owens-Illinois Glass Co. v. McKibbin*, 385 Ill. 245, 52 N.E.2d 177 (1943); *Coca-Cola Bottling Works Co. etc. v. Kentucky Dept. of Revenue et al.*, 517 S.W.2d 746 (Ky.App.1974); *Nehi Bottling Co., Inc. v. Gallman et al.*, 39 A.D.2d 256, 333 N.Y.S.2d 824 (1972); *Consolidated Paper Co. v. Nims*, 306 Mich. 216, 10 N.W.2d 833 (1943). We have read these cases and also some cases cited in them. In dealing with the issue which we have here, the opinions indicate that there was rather extensive evidence in the respective records, which evidence the courts found it necessary to consider. The parties here should have recognized that fact in considering the cases and preparing their record. Only one of the cited cases was decided on the pleadings and, in a subsequent opinion (*Belleville Dr. Pepper*, supra), the same court said that the court there was "thoroughly apprised of the manner of doing business, * * * "; moreover, the allegations of the petition or complaint in that case were not comparable to those here.

We summarize here collectively the fact questions considered, directly or indirectly, by those courts on the issue of *sale* or *no sale* (to the retailers by the bottlers). They are as follows: What was the agreement, if any, between the bottlers and the retailers concerning the bottles? What was the cost of the bottles? Were deposits made for bottles at the different levels, and specifically what were they? Were records of these deposits kept? What percentage of bottles was returned to the bottlers? How many times were bottles returned to the bottlers on the average? How were credits given? Do the bottlers pick up the empty bottles and, if so, how frequently? Were the deposits less than the cost of the bottles? Was there any requirement for a return of the bottles, or any right of reclamation, or, conversely, was a return purely optional with the retailer and the ultimate consumer? Did the bottlers agree to take back the bottles and refund the deposits and, if so, how was such agreement made? Was there any imprint or permanent labeling on the bottles of names, trademarks, etc.? Did the retailer lose anything by reason of bottle deposits? Do the bottlers keep records concerning their bottles, such as inventories, costs, disposition, etc.? Are the bottles of one bottler ever used for the product of any other bottler? How are the drinks invoiced to the retailers, and are the bottles included? Also are there any other circumstances in the actual method and practice used which would indicate the substance and purpose of the transaction? And we might add here: Do the respective bottlers accept the return of the bottles of *others* and give credit therefor? Do the bottlers advertise that the bottles are merely loaned?

While the parties have more or less *assumed* in their briefs the making of some sort of deposits on the bottles, we decline to assume this or any other undisclosed facts.

It would not be possible here to write an intelligent statement of facts for an opinion. Since this case is to be reversed and remanded for a total lack of evidence, we suggest that upon retrial, if there is one, such evidence as is available should be produced upon the foregoing elements. It is possible that some matters might be stipulated. The parties should have leave to amend their pleadings if they desire to do so. If the case is retried (as a class action), Rule 52.08 should be observed and followed, and perhaps some relief might be obtained under subsection (d) of that Rule to avoid repetitious testimony.

In spite of the total lack of evidence or admissions concerning the nature of the transactions between plaintiffs and the retailers, the trial court found that the plaintiffs and other members of the class were jobbers and that they held the reusable bottles "solely for resale in the regular course of their respective businesses," within the meaning of § 144.615(6) aforesaid; it entered a conclusion of law to the same effect and therein concluded also that plaintiffs were not liable for the tax because of that exemption. The Court further concluded that, while it was not essential that the effect of § 144.011 be determined, nevertheless plaintiffs were also exempted by reason thereof. We are not concerned here with that conclusion. The Court entered its judgment declaring "Rule 34, as amended by paragraphs 2 and 3," was void, illegal, and of no effect, and enjoined defendant and all others interested from enforcing it insofar as it might require plaintiffs or other members of their class to pay sales or use tax on the bottles. From this judgment an appeal was duly taken.

We appreciate the diligence with which this case was considered, and note the fact that appellant has not raised in his brief the point that there was no evidence; however, under Rule 73.01–3(a), effective January 1, 1975, we review the case "upon both the law and the evidence" and we are compelled to find and do find that there is no evidence whatever to support the judgment; hence, it simply cannot stand.

We reverse the judgment and remand the case for retrial, or for such other action as the parties may be advised to take.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.