SMITH BEVERAGE CO. OF COLUM-
BIA, INC., et al., Respondents,

v.

A. Gerald REISS, Director of Revenue of
the State of Missouri, Appellant.

No. 60002.

Supreme Court of Missouri,
En Banc.

June 15, 1978.

Rehearing Denied July 24, 1978.

John D. Ashcroft, Atty. Gen., S. Joel Wilson, Asst. Atty. Gen., Jefferson City, for appellant.

Cullen Coil, Jefferson City, for respondents.

RENDLEN, Judge.

Declaratory judgment action for construction of the State Use Tax laws. Respondents seek a declaration that the Revenue Department's amended Rule 34 conflicts with the Use Tax exemption provisions of § 144.615(6), RSMo 1969,[1] and is thus invalid, also for an injunction to stay enforcement of the Rule and a determination that respondents and others of their class qualify for the exemption afforded by the statute.

In the first hearing of the cause, the trial court adjudged the questioned portion of amended Rule 34 invalid as conflicting with § 144.615(6), and enjoined its enforcement as to plaintiffs and others of their class respecting payment of *sales* or *use* tax on the purchase of reusable soft drink bottles by plaintiff from outstate suppliers. This Court by its opinion in the first appeal, *Smith Beverage Co. of Columbia v. Spradling,* 533 S.W.2d 606 (Mo.1976),[2] identified the issue as "whether the transfer of *bottles* by plaintiffs to 'retailers and other institutions' is or is not a *sale*; or, to be more specific, whether the bottles when purchased by plaintiffs are held by them (and their class members) '*solely for resale in the regular course of business.*'" It was noted the Director had admitted plaintiffs were jobbers of *soft drinks,* but he contended plaintiffs were not jobbers of the *bottles* because they did not *sell* them. This contention is stated in appellant's current brief as follows: "[r]espondents do not purchase and hold these bottles solely for resale, but rather respondents use them over and over again as a convenient and economical way to market their beverage." The Court in the first appeal characterized appellant's position this way: "His theory apparently is that there is merely a loan or bailment." The issue, thus framed, is in the language of the Use Tax, § 144.610.1, which provides: "A tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property . . .," and the qualifying language of the exemption in § 144.615(6), which excludes from the Use Tax, "Tangible personal property held by processors, retailers, importers, manufacturers, wholesalers, or jobbers *solely for resale* in the regular course of business; . . ." (Emphasis added.)

---

1. All citations of statutes are to RSMo 1969, unless otherwise stated.

2. Both in the original trial and on remand, the only sales involved were the interstate sales of bottles from outstate suppliers to Missouri bottlers. As pointed out in the first appeal of this case, no sales tax can be imposed on these transactions because the sales are not made in Missouri. See *Southwestern Bell Telephone Co. v. Morris,* 345 S.W.2d 62 (Mo. banc 1961).

The cause was reversed upon a finding that "there is no evidence, there are no admissions, and there is no stipulation from which this issue can intelligently be resolved." The opinion points out that on the question of whether these bottles are held "solely for resale in the regular course of business" thus qualifying for the exemption of § 144.615(6), the authorities cited from other jurisdictions are divided. The Court suggested a number of factual questions upon which evidence should be obtained and pursuant to that suggestion the parties on remand stipulated[3] to a variety of facts which we summarize: (1) Respondents as jobbers are engaged in the manufacture and sale of bottled soft drinks for sale to various retailers who in turn sell them to the general public; (2) jobbers (who acquire their bottles from outstate suppliers) require deposits on reusable bottles from the retailers who in turn require a similar deposit from the consumers; (3) there is no formal agreement between bottlers and retailers concerning the return of reusable bottles although trade usage establishes that bottlers accept and pay for bottles which retailers choose to return; (4) this system enables the reuse of bottles an average of seven to twelve times before they are lost or discarded and permits a bottle "charge" or "deposit" below the bottler's actual cost; (5) the cost of a reusable bottle ranges from ten to fifteen cents for a bottle smaller than quart size and from twenty to twenty-five cents for a quart size bottle; (6) deposits are approximately five cents on bottles of sixteen ounces or less and ten cents on bottles in excess of the sixteen ounce size; bottlers keep records concerning inventories, costs and deposit accounts of retailers; (7) however, there is no requirement that the consumer return bottles to the retailer or the retailer to return bottles to the bottler; (8) bottles are permanently marked with the name (trademark) of the soft drink contained in the bottle, but are not specifically identifiable to the original bottler; (9) thus bottles first used by one bottler can be reused by another producing the same soft drink; (10) many bottles contain applied color labels reading "return for deposit" and in efforts to encourage return of reusable bottles, advertisements have asked, "Wouldn't you rather borrow our bottles than buy them?"

In the second proceeding, the trial court again declared the amendment to respondent's Rule 34 invalid insofar as it requires plaintiffs and other members of the class represented, "to pay sales or use tax on reusable bottles to their respective suppliers at the time each member purchases those bottles and insofar as said Rule declares that bottlers who bottle carbonated beverages into a reusable bottle and who are required to charge a refundable deposit on those bottles are consumers of those bottles or will be considered to be consumers of those bottles" and the Court again enjoined enforcement of the Rule. This appeal followed.

The Use Tax, generally complementary to the Sales Tax, is designed to tax transactions on which no Sales Tax can be imposed because the sales do not occur in Missouri. Section 144.610 taxes the privilege of "storing, *using or consuming* within this state any article of tangible personal property" (emphasis added) and as a taxing statute must be strictly construed in favor of the taxpayer and against the taxing authority. *Wiethop Truck Sales, Inc. v. Spradling*, 538 S.W.2d 585 (Mo.1976). On the other hand, § 144.615(6) establishes a Use Tax exemption as to tangible personal property held "*solely for resale in the regular course of business*" (emphasis added) and that exemption is to be construed against the taxpayer, though such construction must be reasonable and not curtail the exemption's intended scope and purpose. *City of St. Louis v. State Tax Commission*, 524 S.W.2d 839, 843[2] (Mo. banc 1975).

Seeking to enforce the Use Tax, the Director on September 28, 1973, promulgated his amendment to Rule 34 which is in pertinent part as follows:

3. The stipulation provides that plaintiffs or other witnesses, if sworn, would testify to the "facts" set out therein. This stipulation constitutes the only evidence of record with respect to the matters addressed and there is little or no dispute as to the essential facts.

"A vendor who packages or bottles tangible personal property [1] *into a reusable container* and [2] *will charge a refundable deposit* on those containers *is considered to be the consumer* of those containers. Thus this vendor [bottler] shall pay sales or use tax to his supplier at the time he purchases those containers." (Emphasis added.)

This amendment to the Rule has been described as the Director's interpretation or the Department's view of the term *"consuming"* as used in § 144.610.[4] As noted above, the statute imposes a Use Tax on the privilege of *"consuming"* within this state," any article of tangible personal property and by the Rule the statute is given special application to bottlers. It is declared they *consume* such bottles if they bottle their product (1) "into a reusable container" and (2) "charge a refundable deposit on those containers" and in such event, the bottler "shall pay . . . use tax to his supplier at the time he purchases those containers." If such is the intended purpose of the Rule, and it appears so to be, plaintiffs are brought within the ambit of § 144.610 without regard to the exemption provided in § 144.615(6), and the Rule in effect nullifies the exemption section as to them. Alternatively, the amended Rule might be interpreted as not absolutely negating but merely qualifying § 144.615(6), so that any bottler placing his product in a reusable container and charging a refundable deposit would be considered as *not* holding the same "solely for resale in the regular course of business", and thus ineligible for the exemption. Such interpretation, though couched in language of § 144.615(6), (rather than the language of § 144.610) would work a similar foreclosure of plaintiffs' claim to the exemption. We are neither bound nor persuaded by these inflexible interpretations of the legislative intent. Instead we must examine the language of the statute and determine whether plaintiff qualifies for the intended exemption. This leads to the principal question at bar, i. e., whether,

without regard to the considerations of Rule 34, it may be said that plaintiffs, in the course of their business, hold such bottles "solely for resale" within the meaning of § 144.615(6).

The term *sale* appearing in the Missouri "Compensatory Use Tax Law" (§§ 144.600–144.745) is defined by § 144.605, RSMo Supp.1975, as:

"any transfer, barter or exchange of the title or ownership of tangible personal property, or the right to use, store or consume the same, for a consideration paid or to be paid . . . ."

That definition is applicable to the term *resale* used in § 144.615(6). The bottles plaintiffs purchase and fill with their products then transfer (sell or bail) to their vendees are exempt from Missouri's Use Tax, if when transferred to the plaintiffs' vendee, such bottles are sold by the plaintiffs rather than merely loaned, bailed or otherwise delivered for some special purpose. To qualify as sales, it must be found that by the transfer, title or ownership of the bottles pass for consideration paid. In *State ex rel. Thompson-Stearns-Roger v. Schaffner*, 489 S.W.2d 207 (Mo.1973), this Court, discussing provisions of the Missouri *sales* tax law, stated "The term 'ownership' cannot be said to have a fixed, definite meaning. Its meaning varies in the context in which the term is used." That concept has application here as clearly many elements of ownership pass from the bottler to his vendee with the conveyance and delivery of the bottles. The retailer who purchases from the bottler and in turn the ultimate consumer have dominion over the bottles they acquire. Each has "paid" for the bottles by their "deposit" and is free to keep or return them. If returned, they have a definite expectation of receiving on the "resale" the amount of the "deposit." In *Coca-Cola Bottling Works Co. v. Kentucky Department of Revenue*, 517 S.W.2d 746 (Ky.1974), the court considered whether bottles and cases delivered from Ohio to

---

**4.** Though not involved here, it appears the Rule is also intended to apply to intrastate bottle sales from manufacturer to bottler and ex- presses the Director's interpretation of property "for use or consumption" as that phrase appears in § 144.010(9), RSMo 1969.

dealers in Kentucky constituted property purchased for storage, use or other consumption in that state, subjecting them to the use tax imposed by the Kentucky statute, or whether the bottles and cases when so delivered were held by the Kentucky dealers for resale, and thus exempt from sales or use tax under KRS 139.100. The statutes, though arranged somewhat differently than the comparable Missouri statutes, exempted from the Kentucky use tax property acquired for sale in the regular course of business. Considering facts, essentially similar to those at bar, the Kentucky court stated,

"[t]here was no obligation on any dealer to return any empty bottles or cases; the dealer was free to use them for any purpose of his own, or to throw them away. Under the law of sales, title to the bottles and cases clearly passed to the dealers, and the 'redemption' by the company was in legal effect a *sale* back to the company. . . . [T]he question is whether there was a sale of the bottles and cases to the dealers within the meaning of the sales and use tax statutes."

The argument was made by the Kentucky Department of Revenue, as in the case at bar, that when selling the bottles and cases the company did not intend to permanently divest itself of title, that the purpose of the company was "*to use*" them on a continuing basis, and "the purported sales are simply a device of convenience to insure that a sufficient percentage of the bottles and cases will be returned for continued use." *Coca-Cola Bottling Works Co. v. Kentucky Department of Revenue*, supra at 748. It was pointed out that the price paid by the dealers and the ultimate consumers for bottle "deposits" was lower than the cost of new bottles and cases. From this the Department contended that "the company could not reasonably be considered to have had a bona fide intent to *sell* the bottles and cases." The Kentucky court considered this contention stating: "[w]e do not find any valid basis for such a conclusion. As a practical matter, the company could afford to sell the bottles and cases below cost, knowing that most buyers, having little use

for the empty bottles and cases, would be willing to sell them back at the original price." (l.c. 748) We are persuaded by the ruling and rationale in that case.

A like result was reached by the Michigan court interpreting that State's Use Tax. In *Goebel Brewing Co. v. Brown*, 306 Mich. 222, 10 N.W.2d 835 (1943), the Michigan court discussed a common form of contract described as "*sale or return* by which property is sold, but is liable to be returned to the seller at the option of the buyer." (Emphasis ours.) The court observed that such transactions vest title immediately in the buyer where it remains unless he exercises his sell-back option. Similarly, the New York court in *Nehi Bottling Co. v. Gallman*, 39 A.D.2d 256, 333 N.Y.S.2d 824 (1972) aff'd, 34 N.Y.2d 808, 359 N.Y.S.2d 44, 316 N.E.2d 331 (1974), held that deposits on the bottles which were much less than their original cost, did not offset the fact that the purchaser was under no legal obligation to return them, had a right to retain them if he chose and to leave the money deposited as payment for the bottles which "amounts in law to a sale of them, at the election of the party to whom they are delivered." The court further stated, "[a]t most, the present record establishes the continuous offer by the petitioner to repurchase such bottles and carrying cases as its vendees might decide to offer to it for repurchase."

Other cases cited by respondent reaching similar results include *Indiana Department of State Revenue v. Associated Beverage Company, Inc.*, 353 N.E.2d 544 (Ind.App. 1976); *Belleville Dr. Pepper Co. v. Korshak*, 36 Ill.2d 352, 221 N.E.2d 635 (1965) and *Owens-Illinois Glass Co. v. McKibbin*, 52 N.E.2d 117 (Ill.1943).

Appellant cites a number of contrary decisions, including *District of Columbia v. Seven-Up Washington, Inc.*, 93 U.S.App. D.C. 272, 214 F.2d 197 (1954); *Arkansas Beverage Co. v. Heath*, 257 Ark. 991, 521 S.W.2d 835 (1975); *Gay v. Canada Dry Bottling Co. of Florida*, 59 So.2d 788 (Fla.1952) and *Wichita Coca-Cola Bottling Co. v. United States*, 152 F.2d 6 (5th Cir. 1945). The thrust of those cases is that jobbers in com-

parable fact situations do *not resell* the reusable bottles in which they package their products, but *use* them to convey their product to the ultimate consumer. Among the reasons assigned in these decisions for the results reached were the actual cost to the bottlers of these bottles was significantly more than the deposits required and most bottles were used by the bottler a number of times after the original sale. In the case at bar respondent, contending for "use" vis-a-vis "sale", points to the following: (1) The prices paid by ultimate consumers range between one-third and one-half of the bottle's original cost; (2) though no formal agreement exists between the bottler, retailer and consumer requiring the return of the bottle once the beverage had been consumed, the long standing practice is to do so and most bottles are returned; (3) labels on some bottles employ the words "return for deposit" and advertising encourages returns. In one advertisement the language appeared, "Wouldn't you rather borrow our bottles than buy them?" However, the latter could be construed as merely encouraging return of the bottles, i. e., if bottles are returned for deposit they are borrowed; if kept, they are purchased.

■ Considering all factors, we must ask these additional questions. If an ultimate purchaser drank the beverage and decided to keep, sell, give, destroy or otherwise dispose of the bottle, would the retailer or the bottler have a right to take it from him on the tender of the deposit previously paid or alternatively demand its value? We think not. To like effect, if the bottles were in the ultimate consumer's possession and taken from him wrongfully by a third person, who would have the right of action to recover the bottles or their value? Certainly not the retailer from whom the consumer purchased the full bottles nor the bottler, who in the first instance sold them to the

retailer. The facts, as stipulated here, indicate that in the regular course of business the bottles are purchased by the ultimate consumer of the soft drink with the knowledge that he is free to do with them as he pleases. We conclude that the reasoning of the Kentucky court in *Coca-Cola Bottling Co. v. Kentucky Department of Revenue, supra*, has application here and hold that the bottles purchased by plaintiffs are tangible personal property held by them as jobbers "solely for resale in the regular course of business" and qualify under § 144.615(6), RSMo 1969, as exempt from the Missouri Use Tax.

■ Finally, appellant contends the legislative history and sequence of departmental rules indicate an intent of the legislature to tax the bottles coming into Missouri under the circumstances here. This contention calls for a review of the pertinent statutes and rules. In the usual course of business, conveyance and delivery of the bottles occur at five stages, four of which are repeated numerous times during the useful life of the bottles. *Stage I*: The sale from an outstate manufacturer to a Missouri bottler which is not subject to the Missouri Sales Tax. *Southwestern Bell Telephone Co. v. Morris*, 345 S.W.2d 62 (Mo. banc 1961). *Stage II*: Sale from the bottler to the retailer (e. g., grocer), which is a sale at wholesale and not subject to Missouri retail sales tax. Sections 144.010(8), 144.020. *Stage III*: Sales by the retailer (grocer) to the ultimate beverage consumer (drinker) for which a bottle deposit is required to be refunded on the bottle's return. Transactions at this stage were deemed subject to retail sales tax under Departmental Rule 93 until the enactment of § 144.011 in 1973. *Stage IV*: Sales of the bottle by the consumer who returns the empties to the retailer and receives a refund of his deposit.[5]

5. The record does not disclose if it was the practice of the Department to tax Stage IV sales prior to the enactment of § 144.011. However, pertinent sections of Rule 93 indicate such Stage IV transfers or sales were not considered taxable by the Department for the reason that when the drinker returned the bottles

for a refund, the vendor (grocer) was directed to incorporate the amount of sales tax previously paid by the drinker as a part of the refund. Thus the deposit, plus the sales tax previously paid on the deposit, was refunded. Further, if the purchaser (drinker) returned empties in exchange for full bottles, the sales

*Stage V*: Sales from the retailer back to the bottler. Nothing in the record indicates these have at any time been considered as other than sales for resale.

Stage III sales were subject to the retail sales act as interpreted by the Director of Revenue's Rule 93, which remained in effect until the enactment of § 144.011 in 1973. That Rule provided in part:

> "Bottlers of soft drinks, beer and other beverages are not required to pay sales tax on bottles purchased by them which are used to bottle their beverage. *Such purchases [Stage I] by bottlers are sales for resale.* The bottle is consequently taxed together with its content when sold at retail. [Stage III] In other words, the purchasers or consumers of beverages are liable to remit sales tax to the vendor or seller on the total selling price of the beverage, plus the cost or deposit of the bottles. *The bottle then becomes the property of the purchaser and he has the option to retain the bottle or return same for a refund.* When the latter [Stage IV] occurs, the vendor shall incorporate the amount of sales tax previously paid by the purchaser, as part of said refund. Should the purchaser return 'empties' in exchange for full bottles, sales tax previously paid shall be credited to the cost of the new purchase. Retailers may claim refunds as a deduction on their sales tax returns in an amount equal to the sum refunded to customers." (Emphasis added.)

It is apparent the Department at that time considered Stage I sales from outstate manufacturers to Missouri bottlers as "sales for resale" (thus exempt from the use tax) and that the bottles became the property of the "purchasers or consumers of beverages," and were subject to the payment of sales tax thereon. Also the purchasers had the option to retain or return the bottles for refund. Clearly the Department considered Stage II transactions exempt from *Sales Tax* because they were deemed "*sales for*

*resale*" and for the same reason Stage I transactions were exempt from the use tax under § 144.615(6).

Apparently to relieve the cumbersome process of collecting sales tax on bottle deposits in Stage III transactions and the accounting problems incurred in the refund of those deposits in Stage IV transactions, the Seventy-seventh Missouri General assembly enacted as an amendment to the Sales Tax Law, § 144.011, effective September 15, 1973, which provides:

> "For purposes of Sections 144.010 to 144.510 and the tax imposed thereby, the definition of 'sale at retail' shall not be construed to include the transfer of reusable containers used in connection with the sale of tangible personal property contained therein for which a deposit is required and refunded on return."

Appellant contends enactment of § 144.011 manifests a legislative intent to restrict the use tax exemption of § 144.-615(6). This contention is not well taken for several reasons. Section 144.011, clear and unambiguous in its terms, specifically states it is applicable only to the Sales Tax Law, i. e., §§ 144.010 to 144.510, RSMo 1969, as amended. If the legislature had intended to extend the ambit of § 144.011 to the Use Tax Law, it could have expressly so provided. Additionally, when § 144.011 was enacted, the Revenue Department by Rule 93 had declared its interpretation of § 144.-615(6) as exempting Stage I transactions described here for the reason such sales were considered "sales for resale." Section 144.011 makes no reference to or restricts in any way either § 144.615(6) or the Department's announced interpretation of the Use Tax exemption under then Rule 93. While an administrative interpretation may not be permitted to alter or overturn a prior judicial construction of a statute, administrative interpretations are utilized as a tool for determining legislative intent when construing an ambiguous statute, *State ex rel.*

---

tax previously paid was to be credited against the cost of the new purchase. From this it would seem no sales tax was imposed on Stage IV transactions, apparently for the reason such

transactions would properly be considered as sales for resale since the retailer (grocer) would in turn convey the bottles to the bottler.

*Philipp Transit Lines v. Public Service Commission*, 552 S.W.2d 696, 702 (Mo. banc 1977). We may assume a legislative awareness of Rule 93, yet nothing was done to expressly alter its effect with respect to the Use Tax exemption and nothing appears from which it may reasonably be inferred the legislature intended to alter the Department Rule or restrict § 144.615(6) as it had been formerly construed. To the contrary, it may be fairly inferred no change or restriction of the Use Tax exemption statute was intended for if it were otherwise the legislature could readily have expressed that intention in the statute. Appellant nevertheless argues that since the Sales Tax was removed from Stage III transactions by § 144.011, the legislature must have intended to impose a Use Tax and abrogate the exemption provided in § 144.-615(6) as to Stage I transactions for otherwise the bottles would escape imposition of both Sales and Use Tax. Appellant further contends that the purpose of § 144.011 was to simply change the point at which taxation occurs. However, this hypothesis overlooks the express language of § 144.011, the presumed legislative awareness of then Rule 93 and an apparent legislative intent to exempt the bottles from *Sales* as well as *Use* Tax. Finding no intent to impose restrictions on the exemption provided by § 144.615(6), we hold that the cited portion of the Director of Revenue's amendment to Rule 34 is invalid and void to the extent it requires plaintiffs and other members of the Missouri Soft Drink Association and the class here represented to pay Use Tax on reusable bottles purchased from their respective outstate suppliers.

█ The defendant, as Director of the Department of Revenue of the State of Missouri, is permanently enjoined from enforcing or attempting to enforce the provisions of Rule 34 to the extent they purport to require plaintiffs and members of the class represented to pay Use Tax on reusable bottles to their respective suppliers. The judgment of the trial court as hereby modified is affirmed.

MORGAN, C. J., and BARDGETT and DONNELLY, JJ., concur.

FINCH, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of FINCH, J.

SIMEONE, J., not participating because not a member of the Court when cause was submitted.

FINCH, Judge, dissenting.

The principal opinion holds that bottles purchased by plaintiff bottlers are tangible personal property held by them "solely for resale in the regular course of business" and, hence, qualify under § 144.615(6),[1] for exemption from the compensating use tax. On that basis the opinion holds that defendant is permanently enjoined from enforcing the provisions of the Revenue Department's amended Rule 34 to the extent that it requires plaintiffs and members of the class represented by them to pay use tax on reusable bottles. I disagree with that holding and, hence, must respectfully dissent. I would hold amended Rule 34 to be valid.

Section 144.610 imposes a use tax "for the privilege of storing, using or consuming within this state any article of tangible personal property purchased on or after the effective date" of the act. That language clearly is broad enough to cover the bottles in question unless exempted under some other provision of the act. The principal opinion makes no contention that § 144.610 is not broad enough to apply to the bottles purchased by plaintiffs from outstate suppliers. Instead, it relies on § 144.615(6), a subsection of the exemption section, in holding that the bottles are not subject to tax. In testing the propriety of this conclusion, it must be kept in mind, as the principal opinion recognizes, that in construing tax exemptions, the statute is to be construed against the taxpayer.

In determining applicability of § 144.-615(6), the principal opinion limits itself to

1. All statutory references are to RSMo 1969 unless otherwise indicated.

the question of whether the procedure utilized by plaintiffs results in a "sale" of the bottles in which plaintiffs place and sell their beverages. It emphasizes that " * * * many elements of ownership pass from the bottler to his vendee with the conveyance and delivery of the bottles. The retailer who purchases from the bottler and in turn the ultimate consumer have dominion over the bottles they acquire. Each has 'paid' for the bottles by their 'deposit' and is free to keep or return them. If returned, they have a definite expectation of receiving on the 'resale' the amount of the 'deposit'." On the basis that what occurs results in passage of title to the bottles, the principal opinion holds that the bottles in question qualify under § 144.-615(6) as tangible personal property held solely for resale.

In my view, the conclusion that the transaction between bottler and retailer is technically a "sale" is an inadequate basis upon which to decide this case. Section 144.-615(6) grants an exemption only if the property is held *solely* for resale in the ordinary course of business. Yet, the principal opinion looks only at whether the transfer of the bottles between bottler and retailer can be characterized as a sale. Having concluded that it can, the principal opinion fails to make the more fundamental inquiry mandated by § 144.615(6) as to the purpose for which the property is held by the bottler. The requirement that property be held *solely* for resale cannot be ignored or written out of the statute. It must be given some meaning. In my view, it can be read to mean nothing less than that property may be held for continuing and repeated use in the operation of the business, and therefore subject to tax, even though technically a sale thereof from time to time was contemplated and may be said to have occurred.

When the statute is so interpreted and it is recognized that the exemption granted by § 144.615(6) applies only to property which is held solely for resale and not for any other purpose, it is plain that the analysis made in the principal opinion is incomplete and inadequate. As previously noted, it focuses only on the question of whether one

purpose for which the bottlers hold the bottles is resale rather than on the more pertinent question of whether such is the *only* purpose or is one of multiple purposes.

Even assuming that what occurs results in a technical sale so that the bottler could not enforce recovery of the bottles and the retailer is not obligated to return the bottles, the fact remains that the stipulated facts on which this case was submitted establish that these bottles were not held *solely for resale.* Instead, it is clear that they were acquired and held with the expectation that the bottles would be returned for reuse after the contents were consumed and that they would be used over and over in the bottling and sale of plaintiffs' soft drinks. In fact, on the average, bottles were returned and were reused seven to twelve times. The bottlers followed procedures designed to bring about such return and reuse of bottles. They advertised from time to time to encourage consumers to purchase soft drinks in the most economical manner, which is in a reusable bottle which can be returned for the deposit made thereon when the beverage was purchased. In the case of plaintiff Macon Coca-Cola Company, it has advertised for years, "Wouldn't You Rather Borrow Our Bottles Than Buy Them?"

Other stipulated facts show that the bottles were acquired and held primarily for repeated use in bottling and selling beverages rather than solely for selling them in the usual course of business. When one in business has items solely for resale, it is to be expected that such items will be priced to bring at least cost or, more likely, cost plus a reasonable profit. Plaintiffs did not do this. Instead, bottles were priced at from one-third to one-half of actual cost. Smaller size bottles cost bottlers 10¢ to 15¢ each but the deposit or charge therefor by the bottler to retailers was only 5¢. Bottles larger than 16 oz. cost 20¢ to 25¢ but the deposit or charge thereon to retailers was only 10¢.

Bookkeeping methods also reflected that these bottles were purchased and held pri-

marily for reuse rather than resale in the usual course of business. Each day, when the bottler sold his bottled product to retailers, he did not simply enter gross receipts for product, including beverage and bottles. Instead, he entered on his books a separate record of amounts received from retailers for bottle charges or deposits. That record also gave the amounts expended each day for bottles returned. In addition, Moberly Bottling Company depreciated the cost of each new bottle over a four-year period at the rate of 25% each year. Jefferson City Coca-Cola Company carried new reusable bottles on its books at cost "until the new bottles are placed in service, when the value of each such bottle is changed to its deposit value. The difference between the cost value and the deposit value is charged off as a business expense." The stipulation does not indicate at what point the bottle is charged off completely. "Smith Beverage Company, upon purchase of new reusable bottles, immediately inventories, and thereafter carries each bottle at its deposit value." Quarterly profit and loss statements reflect as a loss in inventory this difference between the cost of bottles purchased and the deposit value of the bottles. None of these methods are ones reasonably expected in the case of goods purchased and held *solely* for resale.

The principal opinion cites several cases from other states in support of the conclusion it reaches. Those cases, like the principal opinion, emphasize and rely on the fact that the transactions between bottlers and retailers have attributes of a sale and purchase in which the bottler has no right to insist on return of bottles and the retailer and ultimate consumer are free to return or keep bottles as they choose.[2] On the other hand, certain other cases, cited but not followed in the principal opinion, examine the *whole* picture to determine the *purposes* for which bottles are purchased and held. They conclude, as I would here, that the bottles are purchased and held for reuse,

not just sale. For example, in *District of Columbia v. Seven-Up Washington*, 93 U.S. App.D.C. 272, 214 F.2d 197 (1954), the bottler sold bottled drinks at prices which, as here, included only a fraction of the cost of bottles and cases. No formal agreement for return or repurchase of the bottles and cases existed but it was understood that the bottler would give credit for those returned. The Tax Court, on the basis that title passed without obligation to return but with an option to do so, held that the bottles and cases were purchased by bottlers for resale. In reversing that ruling, the appellate court said, 93 U.S.App.D.C. at 275, 214 F.2d at 200:

"[W]e think the Tax Court erred in holding that purchases of the bottles and cases by respondents were for the purpose of resale to their customers. The purpose was to use them, not to resell them. Respondents are not in the business of selling bottles or cases but of using them as a means of marketing their soft drinks. We have seen that a charge is made, or a deposit required, for the containers, and that a high percentage of them are returned, whereupon a credit for the charge or deposit is given, or its amount is refunded in cash. We have seen also that this amount is much less than the value of the containers. If full value were charged, sale of the soft drinks themselves would be impeded because of the larger outlay required of purchasers. Yet the fact that some charge is made for the containers, with refund available, induces their return, because respondents' customers, like respondents, also are not in the business of buying and selling bottles and cases, but soft drinks. When we advert further to the fact that except for this constant return of bottles and cases the respondents' businesses could not survive, because the charge or deposit required for the containers is less than their cost, the

---

2. *Coca-Cola Bottling Works Co. v. Kentucky Dep't of Revenue*, 517 S.W.2d 746 (Ky.1974), upon which the principal opinion primarily relies, is not contrary to the views expressed herein. The Kentucky statutory scheme is considerably different from our own and the court made no inquiry into whether the bottles were held for any purpose other than resale.

true purpose of their purchase is apparent. It is to use and reuse them. * * "

Subsequently, 93 U.S.App.D.C. at 276, 214 F.2d at 201, the court summarizes:

"Thus the 'sale' or 'buying' aspect of the dealing between respondents and their customers is overshadowed by respondents' use. *We must keep in mind that the statute does not provide that the tax shall not apply whenever there is a resale*; it is only when the purpose of the purchase is to resell. The true purpose here is not to resell but to use, even if this use is made possible in part through the form of resale and repurchase. * * " (Emphasis supplied.)

I find the foregoing to be well reasoned and highly persuasive. The court's analysis and conclusion coincides with that mandated by our statute for the exemption claim asserted by bottlers in this case.[3]

Although the principal opinion does not rely on the legislative history of the act and the sequence of Department of Revenue rules to justify its conclusion, it does discuss them in response to contentions in the appellant's brief. Some discussion thereof in this dissent is appropriate.

Prior to the adoption of Rule 34 in 1973, the Department's Rule 93 was in force. It provided that bottles containing soft drinks and other beverages were taxable under the retail sales act when sold at retail. Retailers were to remit sales tax on the selling price of the beverage plus the deposit on bottles. It then provided for handling for tax purposes when the bottles were returned for refund, including provisions for refund claims. The rule stated that purchases of bottles by bottlers were for resale and not taxable.

This procedure evidently caused much bookkeeping and confusion at the retail level and, as the principal opinion notes, in 1973 the legislature amended the sales tax act, apparently to relieve the cumbersome process of collecting sales tax on bottle deposits. It enacted § 144.011, effective September 15, 1973,[4] which provides:

"For purposes of sections 144.010 to 144.510 and the tax imposed thereby, the definition of 'sale at retail' shall not be construed to include the transfer of reusable containers used in connection with the sale of tangible personal property contained therein for which a deposit is required and refunded on return."

After that enactment there was no sales tax collected at the retail level. The legislature said that when tangible personal property is placed in reusable containers, for which a deposit, refundable on return, was required, the transfer of the reusable container would not be a sale at retail under the sales tax act. As a result of that enactment, the Department of Revenue reexamined the situation and issued Rule 34 which implicitly concludes that reusable containers purchased and held by bottlers are not held *solely* for resale. It provided that a tax thereon is due at the time of purchase.

The principal opinion seems to conclude that Rules 93 and 34 are inconsistent. However, a closer examination reveals that the premise of this conclusion is unsound. The principal opinion states that "when § 144.011 was enacted, the Revenue Department by Rule 93 had declared *its interpretation of § 144.615(6)* as exempting [the transaction between bottlers and retailers] for the reason such sales were considered 'sales for resale'." [At 67, emphasis supplied.] Rule 93 could not have involved an interpretation of § 144.615(6) because it addressed only the liability of the bottler for *sales* tax and, by its terms, § 144.615(6) applies only to the *use* tax. Although it need not be decided in this case, it would appear that Rule 93 was correct in determining bottlers not liable for sales tax because under §§ 144.010(8) and .020 of the

---

3. *See also Arkansas Beverage Co. v. Heath*, 257 Ark. 991, 521 S.W.2d 835 (1975); *Gay v. Canada Dry Bottling Co. of Florida*, 59 So.2d 788 (Fla.1952); *Wichita Coca-Cola Bottling Co. v. United States*, 152 F.2d 6 (5th Cir. 1945).

4. Laws 1973, p. 223, § 1.

sales tax law, the transaction may be characterized as a sale at wholesale. The principal opinion so concludes at p. 66.

Labeling the transaction a "sale for resale" for purposes of liability for sales tax in Rule 93, although perhaps an inartful choice of words, is by no means inconsistent with the conclusion of Rule 34 that the bottles are not held "solely for resale" so as to be exempt from the use tax. Under the sales tax law, § 144.010(8), a sale includes "any transfer, . . . conditional or otherwise . . . of tangible personal property for a valuable consideration . . ." but § 144.020 taxes only retail sales, which the transfer from bottler to retailer plainly is not. The sales tax provisions under which Rule 93 declared the transaction exempt from the *sales* tax laws obviously require no inquiry into whether a sale is the sole purpose of the transaction. Thus, to compare the two rules is to compare apples and oranges.

The sales tax act and compensating use tax act envision compensating taxes and are designed to tax the sale of property only once. That tax was imposed under Rule 93 on the sale to the consumer until § 144.011 was enacted to effectively remove the bottles from the ambit of the *sales* tax. When this occurred, the Director quite properly conducted a fair reappraisal of what actually occurs and concluded that the bottlers were using the bottles in the course of their business within the meaning and intent of § 144.610. He further concluded that such bottles were not held solely for resale in the ordinary course of business as required for use tax exemption under § 144.615(6) for the reason that they are primarily held as a convenient means of transporting the actual product to the consumer on a recurrent and highly predictable basis. In my view, the stipulated facts in this case establish the correctness of this position.

On the basis of the foregoing, it is apparent that the principal opinion not only fails to apply the conceded rule that exemption statutes are to be construed narrowly but also, as a practical matter, amends the stat-

ute by a construction which ignores the word "solely". The taxpayers in this case plainly failed to sustain the burden of showing that the reusable bottles were held "solely for resale in the regular course of business." On the contrary, the stipulated facts clearly reflect the validity of Rule 34. The judgment below should be reversed and remanded with directions.